UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Plum Island Soap Company, LLC

Plaintiff,

v.

1818 FARMS, LLC. ,

Natasha McCrary, an individual

Defendants

Docket Number

_____

## **COMPLAINT**

### **Parties**

1.      The Plaintiff, Plum Island Soap Company, LLC, is a Massachusetts limited

liability company (collectively "Plum Island"), with a principal place of business located at 205

Northern Boulevard, Plum Island, Newburyport, Massachusetts, 01950.

2.      The Defendant, 1818 Farms, LLC is a limited liability company organized and

existing under the laws of the State of Alabama with its principal place of business at 24889

Lauderdale Street Mooresville, Alabama 35649. 1818 Farms is a developer, producer, distributor

and retailer of toiletries such as soaps and skin care preparations.

3.      The individual Defendant, Natasha McCrary, is an individual who, on information

and belief, resides at 4845 High Street, Mooresville, AL 35649  ("McCrary"). The two

Defendants, McCrary and 1818 Farms, unless the context otherwise requires, shall be referred to

collectively as 1818 or Defendants.

## Jurisdiction and Venue

4.      Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a).

5.      Subject matter jurisdiction is proper pursuant federal question, and venue in this action is proper pursuant to 28 U.S.C. §§ 1391(b) and (c).

6.      1818 transacts business in the Commonwealth of Massachusetts and contracts to supply services or things in the Commonwealth. In particular, 1818 owns and operates an interactive website located at https://store.1818farms.com/ from which 1818 promotes, offers for sale, sells and distributes toiletries to residents of the Commonwealth of Massachusetts.

7.      McCrary as the sole member, officer and director of 1818, on information and belief, McCrary the party in charge of and responsible for all actions relating to the transactions, events and occurrences that give rise to this complaint.

8.      This Court has personal jurisdiction over the Defendants pursuant to the Massachusetts Long Arm Statute, M.G.L. c. 223A, § 3 (2011).

9.      Substantial activities have occurred in Massachusetts that give rise to Plum Island's claims and thus jurisdiction and venue are appropriate in this Commonwealth.

10.      The actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice pursuant to chapter 93A chapter 11 occurred primarily and substantially within the commonwealth.

## Facts Common To All Counts

11.      In or about 1999, Michele Ulchak began Plum Island Soap Company, a company that produces her line of all-natural, toiletries, scented soaps, creams, and oils.

12.      The business of Plum Island was originally a sole proprietorship; the business is now incorporated into a Massachusetts limited liability company.

13.     Plum Island Company owns and holds all of the rights and proprietary interests into and all of the intellectual property that gives rise to any and all of the claims herein.

14.     In 2004, PISC devised the marketing source-identifier of using paint cans as packaging for high-quality, all natural body products for men as incongruous, humorous, recognizable and unforgettable trade dress ("Trade Dress").

15.     In March 2004, Plum Island began using the Trade Dress and the trademark "The Man Can" ("The Man Can") in connection with toiletries.

16.     The Man Can is packaged in a distinctive paint can with a large white or black label and black block lettering on it clearly marking the product as "The Man Can." On top of the can is a paint can opener and bottle opener embossed with the name of the Plum Island Soap Company.

17.     Upon information and belief, Plum Island used the Paint Can Trade Dress exclusively in connection with toiletries for at least five (5) years, thus establishing prima facie evidence of use to demonstrate secondary meaning.

18.     The validity of Plum Island's Paint Can Trade Dress was recognized in 2013 in the United States District Court, District of Massachusetts, in the form of a permanent injunction issued against a copycat competitor. A copy of the permanent injunction is attached as Exhibit 1.

19.     An example of Plum Island's marketing of its Man Can is depicted in the photograph below featuring toiletries attractively splayed in front of the paint can with the paint can opener and bottle opener at the bottom left corner of the photograph.



20.     The Man Can is the most successful of Plum Island's products, and has contributed to gross sales of Plum Island into the millions of dollars. It has been sold in all fifty of the United States and Canada, and was featured in the Boston Globe as one of its "20 quirky gift ideas under $50."[1]

21.     On September 23, 2009, Plum Island applied to register "The Man Can" mark with the United States Patent and Trademark Office (the "PTO"). On August 17, 2010, the PTO approved the application and issued a Certificate of Registration under Registration Number 3833999 (the "Registration"). A copy of the registration certificate is attached as Exhibit 2.

22.     On April 19, 2016, Plum Island applied to for the incontestability of the Registration pursuant to pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065 and on

---

[1] http://www.boston.com/business/specials/holiday/2010/quirkyunusualgifts?pg=11

June 23, 2016 the PTO accepted the filing. Thus, the Man Can Registration has become incontestable.

23.     Plum Island has devoted over 14 years to the cultivation The Man Can mark and Trade Dress as identifying Plum Island's high quality, hand crafted soaps and toiletries. As a result of Plum Island's long and extensive use and promotion of The Man Can Mark and Trade Dress in interstate commerce, The Man Can Mark and Trade Dress have become distinctive.

24.     Upon information and belief, in 2014, 1818 started marketing a set of soaps and shampoos for men in paint cans identical to the Trade Dress and called this product "The Man of the Farm Grooming Can", which utilizes Plum Island's Trade Dress and appropriates its the Man Can mark in its entirety, merely adding the words "of" "Grooming" and "Farm" (the "Infringing Product").

25.     An example of 1818's confusingly similar marketing of its Infringing Product is depicted in the photograph below from 1818's website which features an astonishingly similar display of toiletries with the virtually identical placement of a paint can opener bottle opener at the bottom left corner of the photograph.



26.     Plum Island, through its counsel, first contacted 1818 on October 11, 2017 and demanded that 1818 cease and desist at once using the designation "Man of the Farm Grooming Can" and/or the Trade Dress, and other confusingly similar names, designations and/or trade dress.

27.     On January 19, 2018, 1818, through its counsel Jon Holland entered into an agreement with Plum Island through its counsel to settle this dispute, whereby the parties agreed *inter alia*, that 1818 acknowledged the validity of the Plum Island Trade Dress and agreed to be permanently enjoined from all further use of the Trade Dress and Man Can trademark and any other designation likely to cause confusion with Plus Island's trademarks and Trade Dress (the "Settlement Agreement").

28.     On January 19, 2018, 6:04 pm (EST) Plum Island, through its counsel, sent an electronic email to 1818's attorney, Jon Holland, confirming the parties' acceptance of the material terms of the Settlement Agreement, and the process of preparation of the long form Settlement Agreement to memorialize the agreed-upon terms.

29.     In reliance upon the Settlement Agreement, Plum Island did not file trademark infringement litigation in the Commonwealth of Massachusetts against 1818.

30.     After the parties agreed to the terms of the Settlement Agreement, 1818 lulled Plum Island into spending a week negotiating non-material points to the Settlement Agreement, thereby buying 1818 enough time to prepare and file a lawsuit for Declaratory Judgment in the Northern District of Alabama Northeastern Division, (the "Alabama Action") for declaratory relief action thereby ensuring that it would win the "race to the courthouse."

31.     On January 26, 2018, while both parties were ostensibly continuing to work in good faith to finalize the non-material aspects of the Settlement Agreement, 1818 surreptitiously and without informing counsel for Plum Island with whom counsel for 1818 was in routine contact filed the Alabama Action, expressly repudiating the agreed-upon terms of the Settlement Agreement by, inter alia, declaring that 1818 would continue to market and sell the Infringing Product and  use the Trade Dress, challenge the validity of the Trade Dress and The Man Can trademark, and seek cancellation of the Plum Island trademark registration.

32.     But for the Settlement Agreement, Plum Island would have been the first to file an action, and the forum for trial of the issues presented would have been in the Commonwealth of Massachusetts.

33.     But for the false sense of belief that the Settlement was speeding towards completion, Plum Island would have commenced suit in the appropriate forum under the law, namely the Commonwealth of Massachusetts.

34.     At 10:00 am (EST) On February 1, 2018, attorneys for 1818 and Plum Island engaged in a conference call, wherein the attorneys for 1818 reneged on the agreed-upon terms of the Settlement Agreement, and committed a material breach thereof.

35.     At 11:13 am (EST), On February 1, 2018, less than one hour after the conclusion of the purported negotiation conference call, attorneys for 1818 informed attorneys for Plum Island about the Alabama Lawsuit, which had been filed six (6) days earlier.

## Claims

## Count I: Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1114 By The Defendants

36.     Plum Island realleges the preceding paragraphs.

37.     1818's use of "The Man of The Farm Grooming Can" and Trade Dress is substantially similar in their entireties as to appearance, sound, connotation and commercial impression to the registered trademark "The Man Can" and Trade Dress and constitutes an infringement of Plum Island's registered trademark and Trade Dress.

38.     1818s' use of "The Man of The Farm Grooming Can" and Trade Dress are used in connection with the same kinds of goods as the those produced, marketed and sold by Plum Island.

39.     The purchasing public is likely to be confused, and such use is likely to cause mistake or to deceive the public as to the source or origin of the respective goods, causing irreparable harm to Plum Island for which there is no adequate remedy at law.

40.     McCrary is personally liable for trademark infringement of 1818 Farms, LLC, because McCrary, as the single member, owner and sole officer of the LLC, caused the infringing acts to be done by 1818.

41.     As a result of the 1818s' conduct, Plum Island has suffered and continues to suffer great harm and has been damaged.

**Count II: Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1125 by the Defendants**

42.     Plum Island realleges the preceding paragraphs and hereby incorporates  herein those paragraphs by reference, as though specifically pleaded herein.

43.     1818 has used in commerce confusingly similar trademarks, namely "The Man of The Farm Grooming Can" and the Trade Dress. This constitutes unfair competition pursuant to 15 U.S.C. § 1125(a).

44.     1818's use of "The Man of The Farm Grooming Can" and Trade Dress has and will likely continue to cause confusion, mistake, and deception among consumers.

45.     1818s' unfair competition has caused and will continue to cause damage to Plum Island, and is causing irreparable harm to Plum Island for which there is no adequate remedy at law.

46.     McCreary is personally liable for trademark infringement of 1818 Farms, LLC, because McCrery, as the single member, owner and sole officer of the LLC, caused the infringing acts to be done by 1818.

47.     As a result of 1818's conduct, Plum Island has suffered and continues to suffer great harm and has been damaged.

**COUNT III Contributory Trademark Infringement In Violation of 15 U.S.C. § 1114(1) By The Defendants**

48.     Plum Island repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

49.     With full knowledge of Plum Island's rights in the Man Can Trademark and Trade dress, and after being warned in a cease and desist letter that 1818's such conduct constitute infringement, 1818 and McCrary have participated in or otherwise knowingly contributed to the use, reproduction, and/or imitation of the federally registered Man Can

Trademark by third parties in connection with the sale, offering for sale, distribution, or advertising of goods or services in interstate commerce on behalf of 1818.

50.     1818 and McCrary indirectly have profited from these acts of infringement.

51.     1818 and McCrary's contributory conduct in connection with the unauthorized and unlawful acts of the third party agents, partners, and associates, has enabled 1818 to trade unlawfully upon the established goodwill and reputation of Plum Island.

52.     1818 and McCrary are thereby unjustly enriching themselves at the expense of and to the damage and injury of Plum Island.

53.     The unauthorized use of the Man Can Trademark by 1818 and McCrary and/or their third party agents, partners, and associates, as described above, constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.     McCreary is personally liable for trademark infringement of 1818 Farms, LLC, because McCrery, as the single member, owner and sole officer of the LLC, caused the infringing acts to be done by 1818.

55.     Plum Island has been damaged by the foregoing contributory infringement, has suffered and will continue to suffer monetary damages and loss of goodwill, and absent injunctive relief, will continue to be irreparably harmed by the actions of Goudreau and/or his third party agents, partners, and associates.

### COUNT IV Vicarious Trademark Infringement In Violation of 15 U.S.C. § 1114(1) By The Defendants

56.     Plum Island repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

57.     1818 has participated in or otherwise knowingly contributed to the use, reproduction, and/or imitation of the Trade Dress by utilizing marketing materials 1818 alleges

were created by third parties in connection with the sale, offering for sale, distribution, or advertising of goods or services in interstate commerce on 1818's behalf.

58.     1818 has the right and ability to control the content and appearance of advertising and promotional materials published and distributed on his behalf by third party agents or retailers in connection with the sale, offering for sale, distribution, or advertising of toiletries services in interstate commerce.

59.     The use of the Trade Dress and colorable imitation of the Man Can mark by third party agents in marketing materials as described herein has caused confusion among consumers, and constitutes infringement of Plum Island's Trade Mark and Trade Dress.

60.     1818 receives a direct financial benefit from the unauthorized use of the Plum Island's Trade Mark and Trade Dress by such third parties.

61.     1818 is therefore vicariously liable for the infringing use of the Plum Island's Trade Mark and Trade Dress by his third party agents.

62.     McCreary is personally liable for trademark infringement of 1818 Farms, LLC, because McCrery, as the single member, owner and sole officer of the LLC, caused the infringing acts to be done by 1818.

63.     Plum Island has been damaged by the foregoing vicarious infringement, has suffered and will continue to suffer monetary damages and loss of  goodwill, and absent injunctive relief.

### **COUNT V Trademark Infringement under Massachusetts Common Law By Defendants**

64.     Plum Island repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

65.     1818 is engaged in trade and commerce in the Commonwealth of Massachusetts.

66.     1818's actions as described above regarding the Trade Dress and Man Can Mark constitute trademark infringement in violation of Massachusetts common law.

67.     1818's  use of the Trade Dress and Man Can Mark has caused and is causing irreparable injury to Plum Island for which Plum Island has no adequate remedy at law, and will continue to do so unless 1818 is enjoined by this Court.

68.     1818's infringing use of the Trade Dress and Man Can Mark has been willful, wanton, reckless and in total disregard of Plum Island's rights.

69.     McCreary is personally liable for trademark infringement of 1818 Farms, LLC, because McCrery, as the single member, owner and sole officer of the LLC, caused the infringing acts to be done by 1818.

70.     By reason of the foregoing, Plum Island has suffered and will continue to suffer monetary damages and loss of goodwill.

### Count VI: False Description By 1818 By Defendants

71.     Plum Island realleges the preceding paragraphs and hereby incorporates  herein those paragraphs by reference, as though specifically pleaded herein.

72.     1818's use of "The Man of The Farm Grooming Can" and Trade Dress is such a colorable imitation and copy of Plum Island's trademark "The Man Can", that it is likely to create confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection or association of Plum Island's products, or to deceive consumers as to the origin, sponsorship or approval of 1818's products. Plum Island avers that 1818's use of "The Man of The Farm Grooming Can" and Trade Dress comprises a false description or representation of such business or products under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act).

73.     McCreary is personally liable for trademark infringement of 1818 Farms, LLC, because McCrery, as the single member, owner and sole officer of the LLC, caused the infringing acts to be done by 1818.

74.     As a result of the 1818s' conduct, Plum Island has suffered and continues to suffer great harm and has been damaged.

### Count VII: Breach of Contract and the Covenant of Good Faith and Fair Dealing By Defendants

75.     Plum Island realleges the preceding paragraphs and hereby incorporate herein by reference, as though specifically pleaded herein.

76.     McCrary as the sole member, officer and director of 1818 was personally directing all actions in concert with 1818.

77.     Pursuant to the terms of the Settlement Agreement, 1818 acknowledged the validity of the Plum Island Trade Dress and agreed to be permanently enjoined from all further use of the Trade Dress and Man Can trademark and any other designation likely to cause confusion with Plus Island's trademarks and Trade Dress.

78.     1818 and Plum Island agreed to the terms of the Settlement Agreement on January 19, 2018.

79.     1818 knew that Plum Island would forbear from filing trademark infringement litigation in the Commonwealth of Massachusetts in reliance upon the terms of the Settlement Agreement.

80.     In reliance upon the Settlement Agreement, Plum Island did not file trademark infringement litigation in the Commonwealth of Massachusetts against 1818.

81.     1818 lulled Plum Island into spending a week negotiating non-material points to the Settlement Agreement, thereby buying 1818 enough time to prepare and the Alabama Action.

82.     1818 breached the Settlement Agreement, by surreptitiously filing the Alabama Lawsuit, and expressly repudiated the agreed-upon terms of the Settlement Agreement by, inter alia, challenging the validity of the Trade Dress and The Man Can trademark.

83.     As a result, Plum Island has been damaged.

### Count VIII: Fraud By Defendants

84.     Plum Island realleges the preceding paragraphs and hereby incorporate herein by reference, as though specifically pleaded herein.

85.     McCrary as the sole member, officer and director of 1818 was personally directing all actions in concert with 1818, and is personally liable for those acts.

86.     In order to induce Plum Island not to file trademark litigation, 1818 agreed to the terms of the Settlement Agreement, whereby 1818 acknowledged the validity of the Plum Island Trade Dress and agreed to be permanently enjoined from all further use of the Trade Dress and Man Can trademark and any other designation likely to cause confusion with Plus Island's trademarks and Trade Dress.

87.     1818 and Plum Island agreed to the terms of the Settlement Agreement on January 19, 2018.

88.     1818 knew that Plum Island would forbear from filing trademark infringement litigation in the Commonwealth of Massachusetts in reliance upon the terms of the Settlement Agreement.

89.     In reliance upon the Settlement Agreement, Plum Island did not file trademark infringement litigation in the Commonwealth of Massachusetts against 1818.

90.     After January 19, 2018, the date the parties accepted the terms and conditions of Settlement Agreement, attorneys for the parties exchanged numerous emails and engaged in

telephone conferences ostensibly engaging in good faith efforts to finalize the non-material points of the Settlement Agreement in a long form agreement.

91.     Subsequent to the acceptance of the Settlement Agreement, counsel for 1818 repeatedly represented to counsel for Plum Island that 1818 looked forward to settling this matter amicably and quickly and without resorting to litigation.

92.     Attorneys for 1818 made the statements above to induce Plum Island to forbear from filing trademark infringement litigation in the Commonwealth of Massachusetts.

93.     1818 lulled Plum Island into spending a week negotiating non-material points to the Settlement Agreement, thereby buying 1818 enough time to prepare and the Alabama Action.

94.     Upon information and belief, 1818 did not intend to honor the terms and conditions of the Settlement Agreement.

95.     Plum Island relied upon the above-described misrepresentations.

96.     In belief that the statements made by counsel for 1818 were true, Plum Island did in fact rely upon such statements orally and in writing to forbear from commencing suit and enforcing and protecting its rights in and to the trademark and trade dress.

97.     The complaint in the Alabama Action, filed by 1818 at the direction of McCreary, contains statements and allegations that are baseless and not grounded in fact.

98.     Such statements include but are not limited to any allegations that Plum Island misrepresented to the PTO the scope, description, nature and type of the products that Plum Island marketed with its Man Can.

99.     The fraudulent claims by 1818 in the Complaint in the Alabama Action are contained in sections 40-44; 48-54; and 56-59 (collectively "Fraudulent 1818 Claims").

The verbatim text of the Fraudulent 1818 Claims are set forth as follows:

Fraudulent 1818 Claims 40-44;

40. When Ulchak submitted the '731 Application to the USPTO, her declaration "that all statements made on information and belief are believed to be true" was false, and Ulchak knew her declaration was false.

41. When Ulchak submitted the '731 Application to the USPTO, her representation to the USPTO that THE MAN CAN mark was in use in commerce in connection with the Ulchak Goods was false, and Ulchak knew this representation was false.

42. When Ulchak submitted the '731 Application to the USPTO, her representation to the USPTO that THE MAN CAN mark was in use in commerce in connection with the Ulchak Goods was false because THE MAN CAN mark was not in use in commerce at the time of filing the '731 application in connection with bath gel, bath oil, bath oils for cosmetic purposes, body cream soap, cocoa butter for cosmetic purposes, cosmetics in the form of milks, liquid bath soaps, liquid soaps for hands and face or medicated soap (collectively, the "Fraudulent Goods").

43. Upon information and belief, Ulchak willfully misrepresented to the USPTO that THE MAN CAN mark was in use in commerce in connection with the Fraudulent Goods for the purpose of misleading the USPTO so that she may obtain a trademark registration for goods to which she was not entitled.

Fraudulent 1818 Claims 48-54;

48. When PISC submitted the Affidavit to the USPTO, its representation that "[f]or International Class 003, the mark is in use in commerce on or in connection with all of the goods/all of the services...listed in the existing registration for this specific class" was false, and PISC knew the representation was false.

49. When PISC submitted the Affidavit to the USPTO, its representation that "the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods/all services..., listed in the existing registration for this class" was false, and PISC knew the representation was false.

50. When PISC submitted the Affidavit to the USPTO, its declaration that the "mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. § 1062(c), and is still in use in commerce on or in connection with all goods/services" was false, and PISC knew the declaration was false.

51. When PISC submitted the Affidavit to the USPTO, its declaration "that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true" was false, and PISC knew the declaration was false.

52. The representations and declarations made on behalf of PISC in the Affidavit were false because THE MAN CAN mark was not in use in commerce connection with the Fraudulent Goods at the time of filing the Affidavit and/or prior thereto.

53. The representations and declarations made on behalf of PISC in the Affidavit were false because THE MAN CAN mark had not been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c) on or in connection with all goods/all services listed in the existing registration for class 003.

54. By reason of the foregoing acts, PISC is liable to Plaintiff for all damages it has sustained as a result PISC and Ulchak's fraudulent procurement and renewal of the '999 Registration under 15 U.S.C. § 1120.

Fraudulent 1818 Claims 56-59

56. The U.S. Trademark Registration sought to be cancelled is U.S. Registration No. 3,833,999.

57. During the procurement and renewal of the '999 Registration and application for incontestability therefore, Ulchak and PISC made fraudulent representations to the USPTO that resulted in the issuance and renewal of the '999 Registration in connection with goods to which PISC is not entitled any trademark rights. As a consequence, PISC possesses a scope of protection under the '999 Registration that is broader than to what it is entitled.

58. If PISC is permitted to retain the '999 Registration, Plaintiff will be further damaged

59. By reason of the foregoing facts, U.S. Trademark Registrations No. 3,833,999 should be cancelled pursuant to the Lanham Act, 15 U.S.C. §1119.

100.    As a result, Plum Island has been damaged.

### Count IX: Unfair and Deceptive Trade Practices
### under Massachusetts General Laws 93A§§2 and 11 By Defendants

101.    Plum Island realleges the preceding paragraphs and hereby incorporate herein by reference, as though specifically pleaded herein.

102.    The Plaintiff Plum Island is engaged in trade and/or commerce within the meaning of G.L. c93A §2 and 11;

103.     1818 and McCreary as an officer, director and/or agent of the business entity engaged in trade or commerce, as the agent in control of 1818 and its sole member and officer and manager is also personally liable for those acts that constitute a violation of G.L. c93A;

104.     McCrary is engaged in trade or commerce within the meaning of G.L. c93A §§2 and 11;

105.     McCrary is the party in charge of and responsible for all actions relating to the transactions, events and occurrences that give rise to this complaint.

106.     1818 is engaged in trade and/or commerce within the meaning of G.L. c93A §2 and 11;

107.     The transactions complained of in this matter are all within a business context;

108.     All or substantially all of the acts and omissions complained of that give rise to violations of G. L. c93A occurred in the Commonwealth of Massachusetts;

109.     1818's bad faith actions discussed herein, namely 1818s' willful and intentional use of "The Man of The Farm Grooming Can" and the Trade Dress constitute unfair and deceptive trade practices within the meaning of G.L. c§93A.

110.     In 1818's complaint in the Alabama Action, 1818 admitted that it will continue to use Plum Island's Trade Dress, even after acknowledging the validity of such Trade Dress and agreeing to cease and desist all use thereof, and all such actions constitute unfair and deceptive trade practices within the meaning of G.L. c§93A.

111.     1818's actions, namely agreeing to the Settlement Agreement and lulling Plum Island into spending a week negotiating non-material points to the Settlement Agreement, thereby buying 1818 enough time to prepare and the Alabama Action constitutes fraud and constitutes unfair and deceptive trade practices within the meaning of G.L. c§93A.

112.    1818's willful and intentional breach of contract constitutes unfair and deceptive trade practices within the meaning of G.L. c§93A.

113.    1818's bad faith conduct, namely the surreptitious filing of the Alabama Action during supposed good faith settlement discussions, constitutes a wrongful initiation of a lawsuit, and constitutes unfair and deceptive trade practices within the meaning of G.L. c§93A.

114.    Moreover, the preparation and filing of the Alabama Action after acceptance of the Settlement Agreement constitutes a knowing and willful violation of G.L. c93A §§2 and 11 which gives rise to punitive damages of not less than two times nor more than three times actual damages, plus attorney's fees, costs, and other costs.

115.    As a result of the acts and omissions of the Defendants that give rise to violations of G.L. 93A, Plum Island has suffered and continues to suffer great damage.

**Count X: Application for the Grant of Injunctive Relief Against Both Defendants**

116.    Plum Island realleges the preceding paragraphs and hereby incorporate herein by reference, as though specifically pleaded herein.

117.    Plum Island seeks the grant of a temporary restraining order, preliminary injunction and permanent injunction against both Defendants;

118.    The basis for the grant of such injunctive relief is predicated upon the uniqueness of the Trademarks and trade dress of Plum Island;

119.    Plum Island will suffer irreparable harm in the event that such grant of relief is not made;

120.    The equities favor such relief;

121.    Accordingly, Plum Island seeks the entry of such injunctive relief prohibiting the continuing infringement of its mark and trade dress by the Defendants;

122.    Plum Island seeks such other relief as this Honorable Court deems proper.

---

### Requests for Relief

**WHEREFORE,** Plum Island requests that this Honorable Court:

1.      Find for Plum Island on its claims;

2.      Enforce the terms of the Settlement Agreement;

3.      Order 1818 to disgorge any profits and remit the same to Plum Island pursuant to 15 U.S.C. § 1117(a)(1);

4.      Award actual damages to Plum Island pursuant to 15 U.S.C. § 1117(a)(2);

5.      Award costs to Plum Island pursuant to 15 U.S.C. § 1117(a)(3);

6.      Enter an *ex parte* temporary injunction, preliminary injunction, and permanent injunction pursuant to Mass. R. Civ. P. 65 and 15 U.S.C. § 1116, and any such other authority as follows:

       a.      Enjoining 1818 from using Plum Island's trademark and/or Trade Dress, or any colorable imitation thereof;

       b.      Enjoining the 1818 from using any trademark or trade dress that imitates or is confusingly similar to or in any way similar to Plum Island's trademark "The Man Can", or Trade Dress or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Plum Island's products or their connectedness to 1818;

       c.      Directing 1818 to file with the court and serve on the Plaintiff within thirty days after the service on the 1818 of such injunction a report in writing under oath setting forth in detail the manner and form in which the 1818 has complied with the injunction;

7.      Find that 1818's violations of 15 U.S.C. § 1114(1)(a) were willful and award attorney's fees and treble damages pursuant to 15 U.S.C. § 1117(b);

8.      Find that the 1818s' violations of 15 U.S.C. § 1125(a) were willful and award attorney's fees and treble damages pursuant to 15 U.S.C. § 1117(b);

9.      Find this to be an exceptional case and award Plaintiff its full costs and reasonable attorneys' fees;

10.     The Court grant Plaintiff any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 or under state law;

11.     Find that the 1818 has violated G. L. c93A and to award such damages, including punitive damages of not less than two times nor more than three times actual damages for any finding of willful and/or a knowing violation of the statute, plus attorney's fees and costs;

12.     Award legal fees on any other basis cognizable in law;

13.     Award any other relief that this Court deems just and proper.

## Jury Demand

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

PLUM ISLAND SOAP COMPANY LLC

by its attorneys,


/s/ Jeffrey S. Baker
Jeffrey S. Baker, Esq.
BAKER & ASSOCIATES, P.C.
Two West Hill Place, Suite 100
Boston, MA 02114
Phone: (617) 573-9505
Fax: (617) 573-9503
E-mail: bakerlaw@aol.com
BBO#544929

Dated: February 2, 2018

# EXHIBIT 1

Case 1:11-cv-11033-NMG   Document 54   Filed 05/29/13   Page 1 of 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PLUM ISLAND SOAP COMPANY, LLC )<br>Plaintiff )<br> )<br>v. )<br> )<br>DANIELLE AND COMPANY, INC, a )<br>Pennsylvania Corporation, and )<br>DANIELLE KELLY FLEMING )<br>Defendants ) | Civil Action No. 1:11-CV-11033-NMG |

### PERMANENT INJUNCTION

1. Danielle and Company, Inc., Danielle Fleming individually or any other company in which Danielle Fleming has or shall have any legal or equitable right or interest, are hereby permanently **ENJOINED** from selling, marketing, advertising, distributing, or otherwise placing into commerce any of its products in trade dress or other packaging which consists of paint cans, and is further enjoined from marketing, advertising, distributing or otherwise calling any of its products any name similar to the Man Can, including, but not limited to, the Manly Man Can, "The Classic Man Can", "The Naked Man Can", "the Manly Man", The Classic Man", "The Modern Man" or the "Modern Man Can" of any type, description or nature, or any other confusingly similar name with respect to any of their products. This limitation and restriction shall apply to any colored label used by Danielle and Company, Inc. with its different versions of its Man Can and paint can trade dress and packaging.

2. None of the cans or packaging described in paragraph one hereinabove shall be deemed to include any of the "Man Can" products originally distributed by Danielle And Company, Inc. that were packaged in paint cans which were previously sold by Danielle and Company, Inc. during such period from December 2008 to and including November 2010, and which may be currently offered for sale by a third party.

This permanent injunction shall last in perpetuity.

**SO ORDERED.**

*Nathaniel M Gorton*
(                Gorton, J.)
United States District Judge

5/29/13

**Exhibit 2**

# United States of America

### United States Patent and Trademark Office

## THE MAN CAN

**Reg. No. 3,833,999**
**Registered Aug. 17, 2010**
**Int. Cl.: 3**

**TRADEMARK**
**PRINCIPAL REGISTER**

ULCHAK, MICHELE A. (UNITED STATES INDIVIDUAL), DBA PLUM ISLAND SOAP
COMPANY
205 NORTHERN BLVD.
NEWBURYPORT, MA 01950

FOR: BAR SOAP; BATH GEL; BATH OIL; BATH OILS FOR COSMETIC PURPOSES; BATH
SOAPS; BATH SOAPS IN LIQUID, SOLID OR GEL FORM; BODY AND BEAUTY CARE
COSMETICS; BODY CREAM SOAP; COCOA BUTTER FOR COSMETIC PURPOSES; COS-
METIC SOAPS; COSMETICS IN THE FORM OF MILKS, LOTIONS AND EMULSIONS; GIFT
BASKETS CONTAINING NON-MEDICATED BATH PREPARATIONS AND COSMETIC
PREPARATIONS; HAND SOAPS; LIQUID BATH SOAPS; LIQUID SOAPS FOR HANDS AND
FACE; MEDICATED SOAP; NON-MEDICATED TOILETRIES; OILS FOR COSMETIC PUR-
POSES; OILS FOR TOILETRY PURPOSES; SHAVING SOAPS; SOAPS FOR BODY CARE,
IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 3-1-2004; IN COMMERCE 3-1-2004.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SEC. 2(F).

SER. NO. 77-832,731, FILED 9-23-2009.

MARY CRAWFORD, EXAMINING ATTORNEY





Director of the United States Patent and Trademark Office