## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PLUM ISLAND SOAP COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-10214 |
| | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| 1818 FARMS, LLC and NATASHA MCCRARY, | ) | **MOTION IS OPPOSED** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS, OR IN THE
## <u>ALTERNATIVE, TO TRANSFER OR TO STAY PROCEEDINGS</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................... i

TABLE OF AUTHORITIES ............................................................... iii

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS .....................................................................3

ARGUMENT AND AUTHORITIES...................................................16

    I.    Plaintiff's Later-Filed Complaint Should Be Dismissed Under the First-to-File Rule. ......................................................... 16

        A.    No Special Circumstances Defeat the First-to-File Rule Here. ...................................................................... 22

            1.    Neither convenience of the parties nor witness availability presents a "special circumstance." ............. 22

            2.    There is No Evidence of 1818 Farms Racing to the Courthouse or Forum Shopping. ................................... 24

    II.    Dismissal is Appropriate Because Plaintiff's Claims Are Compulsory Counterclaims in The Alabama Action.......................... 29

    III.    Plaintiff's Complaint Should Be Dismissed because this Court Lacks Personal Jurisdiction over the Defendants.............................. 31

        A.    There is no basis for specific jurisdiction. ............................... 32

            1.    The Massachusetts Long Arm Statute is Co-Extensive with the Limits of Due Process under the United States Constitution. ...................................... 33

            2.    Plaintiff has failed to meet the three-prong test to demonstrate specific jurisdiction over Defendants. ...... 33

        B.    This Court Lacks General Jurisdiction Over the Defendants. ................................................................. 42

    IV.    Alternatively, this Case Should be Transferred to the Venue of the First-Filed Action. ........................................................ 44

        A.    The Interests of Justice Favor Transfer of this Action to the Northern District of Alabama. ........................................... 44

        B.    The Convenience of Parties and Witnesses Favors Transfer of this Action to the Northern District of Alabama. ................................................................. 45

1. Plaintiff's choice of forum, the connection between this forum and the issues, and the public interests at stake are neutral factors, and do not weigh against transfer. .................................................... 46

V.    If Dismissal or Transfer of this Case is not Appropriate, this Case Should be Stayed Pending Determination of Proper Venue in the Alabama Action ........................................................ 47

VI.   Plaintiff's Complaint Fails To State A Claim Against McCrary. ....... 49

A.    Claims Based on Mere Conjecture Fail to Satisfy Rule 12(b)(6). .................................................................... 49

B.    Plaintiff's Clams against McCrary Improperly Seek to Hold her Liable for the Actions of 1818 Farms and Fail as a Matter of Law. ............................................................... 50

CONCLUSION ..................................................................................... 54

CERTIFICATE OF SERVICE .............................................................. 56

# TABLE OF AUTHORITIES

## CASES

*Agridyne Techs., Inc. v. W.R. Grace & Co.*,
863 F. Supp. 1522 (D. Utah 1994) ...................................................... 20

*Alden Corp. v. Eazypower Corp.*,
294 F. Supp. 2d 233 (D. Conn. 2003) ................................................ 20

*Apex, LLC v. 24 Hour Fitness, USA, Inc.*, No. C.A. 08-169ML,
2008 WL 4158915 (D.R.I. Sept. 9, 2008)......................................... 48

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................... 49, 50

*Be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ...................................................... 39, 40

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................... 49

*Biogen, Inc. v. Schering AG*,
954 F. Supp. 391 (D. Mass. 1996)............................................... 18, 20

*Biolitec, Inc. v. AngioDynamics, Inc.*,
581 F. Supp. 2d 152 (D. Mass. 2008).................................................. 44

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017).................................................................... 42

*Boit v. Gar-Tec Prods., Inc.*,
967 F.2d 671 (1st Cir. 1992)............................................................ 31

*Bos. and Me. Corp. v. United Trans. Union*,
110 F.R.D. 322, 330 (D. Mass. 1986) ................................................ 47

*Brower v. Flint Ink Corp.*,
865 F. Supp. 564 (N.D. Iowa 1994) ............................................. 20, 24

*Burnham v. Superior Court of California, Cnty. of Marin*,
495 U.S. 604 (1990) ........................................................ 43

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*,
295 F.3d 59 (1st Cir. 2002) ............................................. 34

*Carter v. Pub. Fin. Corp.*,
73 F.R.D. 488 (N.D. Ala. 1977) ....................................... 30

*Chiron Corp. v. Advanced Chemtech, Inc.*,
869 F. Supp. 800 ...................................................... 20, 23

*Cianbro Corp. v. Curran-Lavoie, Inc.*,
814 F.2d 7 (1st Cir. 1987) ............................................ 17, 48

*Coady v. Ashcraft–Gerel*,
223 F.3d 1 (1st Cir. 2000) ............................................... 47

*Colo. River Water v. U.S.*,
424 U.S. 800 (1976) ...................................................... 17

*Cont'l Grain Co. v. The Barge FBL-585*,
364 U.S. 19 (1960) ........................................................ 45

*Culley v. Cato*, No. 064079,
2007 WL 867043 (Mass. Super. March 5, 2007) ................. 53

*Daimler AG v. Bauman*,
571 U.S. 117, 134 S. Ct. 746 (2014) ............................... 42, 43

*Daimler Chrysler Corp. v. Gen. Motors Corp.*,
133 F. Supp. 2d 1041 (N.D. Ohio 2001) ............................. 19

*DISH Network LLC v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) ................................ 50

*Dodora Unified Commc'n, Inc. v. Direct Info. Pvt. Ltd.*,
379 F. Supp. 2d 10 (D. Mass. 2005) ................................. 31

*DuPont Pharms. Co. v. Sonus Pharms., Inc.*,
  122 F. Supp. 2d 230 (D. Mass. 2000) .................................................. 46

*EMC Corp. v. Parallel Iron, LLC*,
  914 F. Supp. 2d 125 (D. Mass. 2012) .................................................. 48

*EMC Corp. v. Petter*,
  104 F. Supp. 3d 127 (D. Mass. 2015) .............................................. 34, 41

*Evans v. Multicon Const. Corp.*,
  30 Mass. App. Ct. 728 (1991) ...................................................... 51, 53

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*,
  46 F.3d 138 (1st Cir. 1995) ............................................................... 31

*Gastineau v. Gifford*, No. 11-11096-RWZ,
  2011 WL 4381501 (D. Mass. Sept. 19, 2011) ...................................... 45

*Gemco Latinoamerica, Inc. v. Seiko Time Corp.*,
  623 F. Supp. 912 (D.P.R. 1985) ......................................................... 48

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) .....................................................Passim

*Genzyme Corp. v. Shire Human Genetic Therapies, Inc.*,
  906 F. Supp. 2d 9, 18 (D. Mass. 2012) ............................................... 38

*Gerstle v. Nat'l Credit Adjusters, LLC*,
  76 F. Supp. 3d 503 (S.D.N.Y. 2015) .................................................. 36

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) .................................................................... 32, 42

*Grice v. VIM Holdings Grp., LLC*,
  280 F. Supp. 3d 258, 269 (D. Mass 2017) ........................................ 31, 34

*Gronk Nation, LLC v. Sully's Tees, LLC*,
  37 F. Supp. 3d 495 (D. Mass. 2014) .................................................. 49

*GSI Lumonics, Inc. v. BioDiscovery, Inc.*,
  112 F. Supp. 2d 99 (D. Mass. 2000) ............................................................ 17, 20

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
  179 F.R.D. 264 (C.D. Cal. 1998) .................................................................... 20

*Hannon v. Beard*,
  524 F.3d 275 (1st Cir. 2008) .......................................................................... 33

*Harris v. Mills*,
  572 F. 3d 66 (2d Cir. 2009) ............................................................................ 50

*Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*,
  249 F. Supp. 2d 12 (D. Mass. 2002) ......................................................... Passim

*Intervet, Inc. v. Merial Ltd.*,
  535 F. Supp. 2d 112 (D.D.C. 2008) ............................................................... 30

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ....................................................................................... 31

*Iovate Health Sciences, Inc. v. Allmax Nutrition, Inc.*,
  549 F. Supp. 2d 127 (D. Mass. 2008) ............................................................ 35

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ....................................................................................... 43

*Johnson Creative Arts, Inc. v. Wool Masters, Inc.*,
  573 F.Supp. 1106 (D. Mass. 1983) ................................................................ 35

*Johnson v. New York Life Ins. Co.*, No, 12-11026-MLW,
  2013 WL 1003432 (D. Mass. Mar. 14, 2013) ................................................ 45

*Kerotest Mfg Co. v. C–O Two Fire Equip. Co.*,
  342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200 (1952) ....................................... 17

*Kleninerman v. Luxtron Corp.*,
  107 F. Supp. 2d 122 (D. Mass. 2000) ................................................. 20, 25, 27

*La Vallee v. Parrot–Ice Drink Prods. of Am., 280 Inc.*,
  193 F. Supp. 2d 296 (D. Mass. 2002) .................................................. 35

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*,
  799 F.2d 1312 (9th Cir. 1986) .......................................................... 29

*Lorenzana v. S. Am. Rests. Corp.*,
  799 F.3d 31 (1st Cir. 2015) .............................................................. 49

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
  232 F.3d 1369 (Fed. Cir. 2000) ........................................................ 33

*M-R Logistics, LLC v. Riverside Rail, LLC*,
  537 F. Supp. 2d 269 (D. Mass. 2008) ................................................ 35

*Mann Manuf., Inc. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) ............................................................ 17

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005) ........................................................ 18

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
  675 F.2d 1169 (11th Cir. 1982) .................................................... 17, 18

*Metcalfe v. Renaissance Marine, Inc.*,
  566 F.3d 324 (3rd Cir. 2009) ............................................................ 32

*Mukarker v. City of Phila.*,
  178 F. Supp. 3d 8 (D. Mass. 2016) .................................................... 34

*My Bread Baking Co. v. Cumberland Farms, Inc.*,
  353 Mass. 614 (1968) ...................................................................... 51

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
  989 F.2d 1002 (8th Cir. 1993) ...................................................... 28, 29

*Pepsi–Cola Metro. Bottling Co. v. Checkers, Inc.*,
  754 F.2d 10 (1st Cir. 1985) .............................................................. 51

*Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC*,
   196 F. Supp. 3d 123 (D. Mass. 2016) ........................................................ 39, 40

*Plough, Inc. v. Allergan, Inc.*,
   741 F. Supp. 144 (W.D. Tenn. 1990) ................................................................. 17

*Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.*,
   347 F.3d 935 (Fed. Cir. 2003) ............................................................................ 30

*R.J. Reynolds Tobacco Co. v. Star Scientific, Inc.*,
   169 F. Supp. 2d 452 (M.D.N.C. 2001) ............................................................... 20

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt*,
   148 F.3d 1355 (Fed. Cir. 1998) ......................................................................... 33

*Reebok Int'l Ltd. v. Dunkadelic, Inc.*, No. CIV.A. 03-CV-11471-G,
   2004 WL 413266 (D. Mass. Mar. 2, 2004) ................................................... 19, 20

*S.E.C. v. Tambone*,
   597 F.3d 436 (1st Cir. 2010) .............................................................................. 50

*Serco Servs. Co., L.P. v. Kelley Co.*,
   51 F.3d 1037 (Fed. Cir. 1995) ........................................................................... 18

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
   543 F. Supp. 2d 404 (E.D. Pa. 2008) ............................................................ 21, 22

*Silver Line Bldg. Prod. LLC v. J-Channel Indus. Corp.*,
   12 F. Supp. 3d 320 (E.D.N.Y. 2014) .................................................................. 22

*Smith v. McIver*,
   22 U.S. 532 (1824) ............................................................................................. 17

*Smith v. Shining Rock Golf Cmty., LLC*, No. 20061510B,
   2007 WL 2110958 (Mass. Super. June 20, 2007) ..................................... 51, 52, 53

*Sony Elecs., Inc. v. Orion IP*, No. C.A. 05-255,
   2006 WL 680657 (D. Del. March 14, 2006) ....................................................... 24

*Sun Life Assur. Co. of Can. v. Sun Bancorp, Inc.*,
  946 F. Supp. 2d 182 (D. Mass. 2012) ................................................................. 39

*Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp.*,
  125 F.2d 1008 (3d Cir. 1942) ........................................................................... 24

*Trustco Bank v. Automated Transactions, LLC*,
  933 F. Supp. 2d 668 (D. Del. 2013) ................................................................. 28

*U.S. ex rel. Ondis v. City of Woonsocket, R.I.*,
  480 F. Supp. 2d 434 (D. Mass. 2007) .............................................................. 47

*United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*,
  960 F.2d 1080 (1st Cir. 1992) ..................................................................... 34, 38

*United Fruit Co. v. Standard Fruit & S.S. Co.*,
  282 F. Supp. 338 (D. Mass. 1968) ........................................................ 21, 29, 30

*U.S. v. Swiss Am. Bank, Ltd.*,
  274 F.3d 610 (1st Cir. 2001) ....................................................................... 36, 39

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ...................................................................................... 39

**STATUTES**

28 U.S.C. § 1404(a) .................................................................................. 44, 45

28 U.S.C. §§ 1404 and 1406 ............................................................................. 1

Ala. Code § 10A-5A-3.01 ................................................................................ 51

Mass. Gen. Law. ch. 223A, § 3 ....................................................................... 32

Mass. Gen. Laws ch. 156C § 22 ...................................................................... 51

Mass. Gen. Laws ch. 93A §§ 2 and 11 ............................................................ 38

**RULES**

Federal Rule of Civil Procedure 12(b)(2) ...................................................... 1, 2, 32

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 2, 54

Federal Rule of Civil Procedure 13 ........................................................ 29, 30, 31

## PRELIMINARY STATEMENT

Defendants 1818 Farms, LLC ("1818 Farms") and Natasha McCrary ("McCrary," with 1818 Farms, "Defendants") submit this memorandum of law in support of their motion to dismiss under the first-to-file rule, for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, to transfer venue to the Northern District of Alabama pursuant to 28 U.S.C. §§ 1404 and 1406 or to stay proceedings pending resolution of the question of proper venue in the first-filed Alabama action. Plaintiff does not consent to Defendants' Motion.

Defendant 1818 Farms instituted an action, *1818 Farms LLC v. Plum Island Soap Company, LLC*, Case 5:18-cv-00135-HNJ in the United States District Court for the Northern District of Alabama (the "Alabama action"), involving the facts prior to Plaintiff filing its Complaint (Doc. 1) in this case. Plaintiff's Complaint attempts to allege (1) trademark infringement, contributory trademark infringement and vicarious trademark infringement under the Lanham Act and the common law of the state of Massachusetts; (2) false description or representation of business products under the Lanham Act; and (3) unfair and deceptive trade practices under the laws of Massachusetts. (*See id.*) Additionally, Plaintiff includes in its

Complaint claims for (4) breach of contract and the covenant of good faith and fair dealing and (5) fraud.

Plaintiff PISC has created a forum dispute by filing this action, a duplicative action based on occurrences that mirror those that form the bases of 1818 Farms' first-filed Alabama action. The Alabama action and this action involve identical trademarks, trade dress and trademark registration and embrace the same issues. Accordingly, this Court should dismiss Plaintiff's Complaint under the first-to-file rule and because Plaintiff's claims are compulsory counterclaims in the Alabama action.

Plaintiff's Complaint also should be dismissed pursuant to Rules 12(b)(2) for lack of personal jurisdiction. Defendants have their sole place of business in Alabama and are not otherwise present in Massachusetts. Alternatively, Defendants request that this Court enter an Order transferring this action to the United States District Court for the Northern District of Alabama under the first-to-file rule, where the prior-filed Alabama action is pending, or otherwise stay this case pending resolution of the Alabama action. Should this Court decide to retain jurisdiction over this case, Plaintiff's claims against Defendant McCrary are due to be dismissed under 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

## STATEMENT OF FACTS

1818 Farms, LLC is an Alabama limited liability company with locations at Mooresville, Alabama and Huntsville, Alabama. (*See* Declaration of Natasha McCrary attached hereto as <u>Exhibit A</u>, ¶ 6.) 1818 Farms is a developer and distributor of toiletries including, *inter alia*, facial creams, body creams, hand moisturizing creams, lip balm, cuticle balm, beard and shave oils and gift baskets containing cosmetic preparations. (*Id.* at ¶ 19.)

All of 1818 Farms' assets are located in Alabama, and its day-to-day operations are conducted from its office in Alabama. (*Id.* at ¶ 7.) 1818 Farms has twelve employees, all of whom reside in Alabama. (*Id.* at ¶ 9.) 1818 Farms' corporate governance is conducted from one or both or 1818 Farms' Alabama locations, including corporate decision-making relating to the development of 1818 Farms' products and its packaging, all marketing strategies, and all decisions to obtain trademarks. (*Id.* at ¶ 10.)

1818 Farms has no contacts with Massachusetts through which it reasonably could foresee being sued there. (*Id.* at ¶ 18.) 1818 Farms has no employees, members, agents, managers, officers, directors, or other personnel in Massachusetts, and never has. (*Id.* at ¶ 9.) 1818 Farms has never had a regular place of business in Massachusetts, does not own, maintain or hold a lease on any Massachusetts personal property or real estate, and does not maintain a physical

address or post office box in Massachusetts. (*Id.* at ¶ 9.)  It owns no Massachusetts assets. (*Id.*) 1818 Farms does not own or lease any real property in Massachusetts or operate any facilities there. (*Id.* at ¶ 9.)

1818 Farms has never availed itself of the benefits or protections of Massachusetts law. (*Id.* at ¶ 17.) 1818 Farms does not specifically target Massachusetts consumers of any goods it offers for sale. (*Id.* at ¶ 16.)  McCrary has never traveled to Massachusetts on business for 1818 Farms. (*Id.* at ¶ 11.) None of 1818 Farms' suppliers or vendors are or have ever been based in Massachusetts. 1818 Farms has never manufactured any products in Massachusetts. (*Id.* at ¶ 8.)  1818 Farms has never sought or applied for a Massachusetts business license. (*Id.* at ¶ 11.) 1818 Farms also never paid any Massachusetts taxes. (Exhibit A, ¶ 11.) 1818 Farms does not own or lease any real property in Massachusetts or operate any facilities there. (*Id.* at ¶ 12.) 1818 Farms is not registered to do business in Massachusetts and does not maintain a registered agent in Massachusetts. (*Id.* at ¶ 13.) 1818 Farms has never had or maintained a Massachusetts-based telephone number. (*Id.* at ¶ 14.) 1818 Farms has not maintained or controlled any Massachusetts bank accounts. (*Id.* at ¶ 14.) 1818 Farms has never been sued in Massachusetts before, does not consent to suit in Massachusetts, and never has consented to jurisdiction as a party to any action in a

Massachusetts court. (*Id.* at ¶ 15.) 1818 Farms also has never designated nor been required to designate an agent for service of process in Massachusetts. (*Id.* at ¶ 15.)

**The 1818 Farms Grooming Can**

Since at least September of 2014, 1818 Farms has promoted its toiletry products under the trademark 1818 FARMS. (Id. at ¶ 20.)  In November of 2014, 1818 Farms introduced to its line of 1818 FARMS-branded products a gift basket containing Shea skin crème, lip balm and soap where the gift basket is provided in the form of a grooming can or bucket ("1818 Farms Grooming Can"). (Exhibit A, ¶ 21.) In June of 2017, the contents of the 1818 Farms Grooming Can were changed to include lip balm, Shea crème, soap and a beard oil or a shave oil (collectively, the "1818 Farms Grooming Can Toiletries"). (Id. at ¶ 21.)  Since its introduction, the 1818 Farms Grooming Can has been promoted by 1818 Farms under the marks MAN OF THE FARM and Man of the Farm Grooming Can 1818 Farms Mooresville, Alabama and Design (collectively, the "1818 Farms Grooming Can Marks").

With the exception of soap, the 1818 Farms Grooming Can and 1818 Farms Grooming Can Toiletries were developed at 1818 Farms' Alabama location, the same location where the 1818 Farms Grooming Can Toiletries, except for soap, are manufactured and the 1818 Farms Grooming Cans are assembled. (Exhibit A, ¶ 23.)  All promotional materials used by 1818 Farms in the advertising of the 1818

Farms Grooming Can and 1818 Farms Grooming Can Toiletries are developed at 1818 Farms' Alabama locations. (Id. at ¶ 25.) Consequently, all of 1818 Farms' documents, materials and things relating to the 1818 Farms Grooming Can, 1818 Farms Grooming Can Toiletries, and the 1818 Farms Grooming Can Marks are located in Alabama. (Id. at 26.)

**The Parties' Pre-Suit Negotiations.**

On October 11, 2017, counsel for PISC, David Herlihy ("Herlihy") mailed a letter to 1818 Farms ("1st PISC Letter") wherein he accused 1818 Farms of infringing PISC's THE MAN CAN trademark and paint can trade dress rights and threatened to sue 1818 Farms if it did not provide written assurance by October 27, 2017, that it would comply with PISC's demands set forth in the letter. (Declaration of Jon Holland, attached hereto as Exhibit B, ¶ 3)

On October 27, 2017, counsel for 1818 Farms, Jon Holland ("Holland"), mailed a letter to Herlihy ("1st 1818 Farms Letter") wherein he denied 1818 Farms was infringing any of PISC's rights, explained why PISC's alleged trade dress rights were weak or nonexistent and stated that "1818 Farms is not in a position to comply with [PISC's] demands." (Exhibit B, ¶ 4) Despite these representations, PISC chose not to file suit against 1818 Farms.

Thirty-five days later, on December 1, 2017, Herlihy mailed a letter to Holland ("2nd PISC Letter") wherein he reiterated the demands communicated in

the 1ˢᵗ PISC Letter, again threatened to sue 1818 Farms if it did not comply with all of PISC's demands and communicated that the settlement offer remained open until December 8, 2017. (Exhibit B, ¶ 5) During the 35-day period between the mailing of the 1ˢᵗ 1818 Farms Letter and the 2ⁿᵈ PISC Letter, the parties did not communicate with one another. (Exhibit B, ¶ 5.)

On December 6, 2017, counsel for PISC and 1818 Farms held a telephone call during which Holland identified the weaknesses of PISC's positions and explained that despite such weaknesses, 1818 Farms was willing to change the packaging for its grooming can product in an effort to settle the dispute. (Exhibit B, ¶ 6.) The next day, Holland sent an e-mail to Herlihy representing that 1818 Farms does not agree with many of PISC's assertions and proposing to settle the dispute by 1818 Farms adopting new packaging for its toiletries. (*Id.*) Despite Holland's persistence that no infringement exists, that PISC's trade dress rights are weak or nonexistent and that 1818 Farms does not intend to comply with all of the demands set forth in 1ˢᵗ PISC Letter or the 2ⁿᵈ PISC Letter, PISC again chose not to file suit against 1818 Farms as threatened in the 1ˢᵗ PISC Letter and the 2ⁿᵈ PISC Letter. (*Id.*)

Fifteen days later, on December 22, 2017, counsel for PISC, Jeffery Baker ("Baker"), mailed a letter to Holland ("3ʳᵈ PISC Letter") wherein he rejected 1818 Farms' settlement proposal, set forth six proposed "material" settlement terms (one

7

of which was a $15,000 demand), threatened to sue 1818 Farms and communicated that the settlement offer remained open until December 29, 2017.  (Exhibit B, ¶ 7) During the 15-day period between the sending of Holland's December 7th e-mail and the mailing of the 3rd PISC Letter, the parties did not communicate with one another. (Exhibit B, ¶ 7.)

On January 5, 2018, Holland mailed a letter to Baker ("2nd 1818 Farms Letter") wherein he communicated that for at least the reasons stated in the 1st 1818 Farms Letter, 1818 Farms is not infringing any trademark or trade dress rights of PISC, but 1818 Farms, nevertheless, "believe[s] that a settlement along the lines proposed in [the 3rd PISC Letter] is possible," assuming PISC agreed that both of the new package proposals supplied with the 2nd 1818 Farms Letter were acceptable to PISC.  (Exhibit B, ¶ 9).  Holland further communicated that 1818 Farms was not agreeable to at least one of the  six "material" settlement terms, was agreeable with some of the "material" settlement terms proposed by PISC and was agreeable in principle to others only to the extent additional terms and conditions were acceptable to PISC. (*Id.*) Despite Holland's persistence that no infringement exists and representation that 1818 Farms was not agreeable to each and every one of the six "material" settlement terms proposed by PISC in the 3rd PISC Letter, PISC once again chose not to file suit against 1818 Farms as threatened in the 1st PISC Letter, the 2nd PISC Letter and the 3rd PISC Letter. (Exhibit B, ¶ 9.)

Twelve days later, on January 17, 2018, Baker forwarded an e-mail to Holland ("4th PISC Letter") wherein he rejected 1818 Farms' "counteroffer" and threatened to sue 1818 Farms if it did not immediately change its mind about the $5,000 settlement amount 1818 Farms offered to pay PISC in its counteroffer. (Exhibit B, ¶ 10)  During the 12-day period between the mailing of the 2nd 1818 Farms Letter and mailing of the 4th PISC Letter, the parties did not communicate with one another. (Exhibit B, ¶ 10.)

On January 19, 2018, a telephone call was held between Holland, Herlihy and Baker wherein PISC's $15,000 settlement demand and 1818 Farms' $5,000 counteroffer were discussed. (Exhibit B, ¶ 11.) During the call, Holland communicated that 1818 Farms was agreeable to PISC's $15,000 settlement demand only on the condition that that PISC was agreeable to the terms proposed by Holland in the 2nd 1818 Farms Letter. (*Id.*)  Counsel for PISC represented that PISC was agreeable to the terms set out in the 2nd 1818 Farms Letter and that they would send over an agreement for Holland's review.  (*Id.*)  Later that day, Herlihy sent an e-mail to Holland wherein he confirmed that he would prepare a settlement agreement "to memorialize the terms we agreed upon today, namely, the payment by 1818 to Plum Island Soap Company. LLC ("PISC") of fifteen thousand dollars

($15,000.00), and the terms set forth in Sections 2-6 in your letter of January 5, 2018[1]." (Exhibit B, ¶ 12.)

On January 22, 2018, Baker mailed to Holland a proposed settlement agreement and a consent judgment and permanent injunction document. (Exhibit B, ¶ 13.) This was the first time PISC mentioned or demanded that 1818 Farms execute a consent judgment and permanent injunction document. (*Id.*) Furthermore, the proposed settlement agreement did not reflect all of the terms of 1818 Farms' counteroffer set out in the 2nd PISC Letter even though in his January 19, 2018, e-mail to Holland, Herlihy represented that he would prepare a settlement agreement to memorialize the terms agreed upon that day, namely, the terms set forth in Sections 2-6 of the 2nd PISC Letter. (*Id.*) For example, Herlihy's proposed settlement agreement did not include 1818 Farm's requirement that any permanent injunction accepted by 1818 Farms must be limited to the relevant goods, namely, "toiletries products marketed specifically to men." (*Id.*) Additionally, PISC's inclusion of the consent judgment and permanent injunction document was inconsistent with 1818 Farms' comment in the 2nd 1818 Farms Letter that the phrase "permanently enjoined," as recited in the 3rd PISC Letter, does not imply any type of court action. (*Id.*)

---

[1] Holland's January 5, 2018, letter is referred to above and in the Holland Declaration as the 2nd 1818 Farms Letter."

On January 25, 2018, Holland sent to Baker an e-mail wherein he attached a copy of the settlement agreement containing a substantial number of changes proposed by 1818 Farms and communicated that 1818 Farms was unwilling to execute the consent judgment and permanent injunction document. (Exhibit B, ¶ 14). Despite the substantial number of changes proposed by 1818 Farms to the settlement agreement and 1818 Farms' unwillingness to execute the consent judgment and permanent injunction document as demand by PISC, PISC again chose not to file suit against 1818 Farms at that time. (*Id.*)

### 1818 Farms' Declaratory Judgment Action and Plaintiff's Second-filed Action for Infringement of Identical Trademarks and Trade Dress.

On January 26, 2018, one hundred seven (107) days after mailing of the 1st PISC Letter, 1818 Farms initiated the Alabama action in order to remove the cloud of infringement that had been hanging over the company since its receipt of the 1st PISC Letter.   (Exhibit B, ¶ 15; Complaint of Defendant 1818 Farms, attached hereto as Exhibit C). 1818 Farms' Complaint in the Alabama action requests, among other things: (1) a declaration that 1818 Farms' use of the name "Man of the Farm Grooming Can" and the 1818 Farms Grooming Can does not infringe or impede upon PISC's alleged rights; (2) a declaration that 1818 Farms' use of the name "Man of the Farm Grooming Can" and the 1818 Farms Grooming Can is lawful; and (3) cancellation of PISC's '999 Registration. (Exhibit C). The decision

to initiate a declaratory action was due in part to Plaintiff's demand that 1818 Farms execute the consent judgment and permanent injunction document, which 1818 Farms believed was an impediment to an out-of-court settlement of the case. (Exhibit B, ¶ 15.) At the time of filing of the Alabama action, 1818 Farms was not subject to any Plaintiff-imposed response deadline. (*Id.*) Furthermore, at no time did 1818 Farms or its counsel represent to Plaintiff or Plaintiff's counsel that 1818 Farms would not file an action seeking declaratory relief or any other type of relief. (*Id.*)

Later that day on January 26, 2018, Baker forwarded an e-mail to Holland wherein he attached a redlined copy of the settlement agreement and represented that Plaintiff "cannot accept the restriction of [sic] that [its] rights only extend to products marketed specifically to men" and that the consent judgment and permanent injunction needs to be part of the settlement agreement. (Exhibit B, ¶ 16.) Plaintiff's rejection of the restriction on its rights contradicted the terms set out in the 2nd 1818 Farms Letter, which Plaintiff allegedly agreed-to on January 19, 2018, and later confirmed by e-mail that day. (Exhibit B, ¶¶ 11 and 12.) In the January 26, 2018 e-mail, Baker represented that "[t]his is [Plaintiff's] final draft." (Exhibit B, ¶ 16.)

On January 29, 2018, Holland forwarded to Baker an e-mail wherein he represented that 1818 Farms cannot agree to revisions made by Plaintiff to Section

11 of the proposed agreement and that 1818 Farms is not agreeable to any provision that gives Plaintiff the discretion to file a consent judgment or that requires 1818 Farms to agree that a likelihood of confusion exists. (Exhibit B, ¶ 17.)

The same day, Baker forwarded an e-mail to Holland wherein he represented that Plaintiff will not compromise on the structure of the settlement and asked "if this is a dead end." (Exhibit B, ¶ 18.) Thus, despite Holland representing to Plaintiff that 1818 Farms cannot agree to some of Plaintiff's revisions and that 1818 Farms is not agreeable to the consent judgment or acknowledging that a likelihood of confusion exists, and despite the fact that Plaintiff was not agreeable to compromising the structure of the settlement, Plaintiff chose once again not to file suit against 1818 Farms. (*Id.*)

In a last ditch effort to settle the case, Holland agreed to hold a telephone call with counsel for Plaintiff on February 1, 2018. During the call, Holland reiterated that 1818 Farms is not agreeable to executing the consent judgment, and counsel for Plaintiff voiced Plaintiff's continued requirement that the consent judgment be part of the proposed settlement agreement. (Exhibit B, ¶ 19.) After the call, it was clear to counsel for 1818 Farms that the parties had reached an impasse. As such, the decision was made to forward a copy of the 1818 Farms complaint to Plaintiff's counsel that day and move forward with this action. (*Id.*)

In its Complaint in this action, Plaintiff alleges that 1818 Farms' use of the name "Man of the Farm Grooming Can" and the 1818 Farms Grooming Can constitutes (1) trademark infringement, contributory trademark infringement and vicarious trademark infringement under the Lanham Act and the common law of the state of Massachusetts; (2) false description or representation of business products under the Lanham Act; and (3) unfair and deceptive trade practices under the laws of Massachusetts. Additionally, Plaintiff includes in its complaint claims for (4) breach of contract and the covenant of good faith and fair dealing and (5) fraud. (Doc. 1, ¶¶ 36 through 115.)

Plaintiff's breach of contract and the covenant of good faith and fair dealing claim is based upon Plaintiff's allegations (1) that 1818 Farms agreed to terms of a settlement agreement on January 19, 2018 ("Alleged Settlement Agreement") whereby 1818 Farms allegedly acknowledged the validity of the Alleged Trade Dress and agreed to be permanently enjoined from all further use of the Alleged Trade Dress and THE MAN CAN trademark, and (2) that 1818 Farms breached the Alleged Settlement Agreement by filing this Alabama Action. (*Id.*, ¶¶ 75 through 82.)

Plaintiff's fraud claims are based upon its allegations (1) that 1818 Farms allegedly induced Plaintiff to forbear filing trademark litigation in the Commonwealth of Massachusetts relating to THE MAN CAN mark and the

Alleged Trade Dress by entering into the Alleged Settlement Agreement, and (2) that 1818 Farms committed fraud by alleging in the Alabama action that the '999 Registration was acquired and maintained by Plaintiff through fraud on the USPTO, and therefore, the '999 Registration should be cancelled. (Doc. 1, ¶¶ 85 through 100.)

In view of the foregoing, it is clear that the two actions involve the same issues – rights regarding the use by 1818 Farms of the name "Man of the Farm Grooming Can" and the 1818 Farms Grooming Can in view of Plaintiff's alleged rights in THE MAN CAN mark, the '999 Registration and the Alleged Trade Dress. (*Compare* 1818 Farms' Alabama Complaint (Exhibit C) *with* Plaintiff's Complaint (Doc. 1).) Accordingly, 1818 Farms filed a motion requesting that the Court in the Alabama action enjoin Plaintiff from proceeding with duplicative and wasteful litigation before this Court and determine proper venue under the first-filed doctrine. (Exhibit D, 1818 Farms' "Venue Motion".) The court in the Alabama action has not yet ruled on the Venue Motion.

Under the "first-filed" doctrine, the Alabama proceedings should be given precedence, and this action should either be dismissed or transferred to the District Court of Alabama for consolidation with the Alabama action. Alternatively, this action should be stayed pending a determination of the proper venue by the Court in the first-filed Alabama action.

## ARGUMENT AND AUTHORITIES

1818 Farms filed the Alabama action prior to the time when Plaintiff filed this action, which involves the same trademark, trade dress and overlapping parties and issues. Plaintiff's claims in this action are compulsory counterclaims that it must assert in the Alabama action. Its Complaint, thus, is improper and should be dismissed. Plaintiff's Complaint is further subject to dismissal because this Court lacks personal jurisdiction over Defendants. Alternatively, under the "first-to-file rule," Plaintiff's claims should be transferred to the Northern District of Alabama, the venue of the first-filed Alabama action, or these proceedings should be stayed until the Court in the first-filed action resolves the question of proper venue. Finally, should the Court find that it has jurisdiction and decide to retain this case, Plaintiff's claims against Defendant McCrary are due to be dismissed for failure to state a claim upon which relief can be granted.

## I.     Plaintiff's Later-Filed Complaint Should Be Dismissed Under the First-to-File Rule.

Because the Alabama Action was filed seven (7) days before Plaintiff filed this action, Plaintiff's Complaint should be dismissed under the first-to-file rule. The "first filed" Alabama action can resolve all the issues in the controversy between the parties, and Plaintiff has no reason for filing its duplicative Complaint in this action other than to create a forum dispute. As the Supreme Court stated, however, "[a]s between federal district courts…the general principle is to avoid

duplicative litigation." *Colo. River Water v. U.S.*, 424 U.S. 800, 817 (1976). Accordingly, the first-filed doctrine has been applied vigorously, including in trademark actions, to avoid forum disputes.

The law is well settled that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535 (1824); *Kerotest Mfg Co. v. C–O Two Fire Equip. Co.*, 342 U.S. 180, 185–86, 72 S. Ct. 219, 96 L. Ed. 200 (1952). Under the first-to-file rule, the entire action should be decided by the court in which the action was first filed. *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987) ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision."); *GSI Lumonics, Inc. v. BioDiscovery, Inc.*, 112 F. Supp. 2d 99, 104–05 (D. Mass. 2000). This means that in "the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide the case." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (citing *Mann Manuf., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)); *Plough, Inc. v. Allergan, Inc.*, 741 F. Supp. 144, 146 (W.D. Tenn. 1990) ("Absent special circumstances, when there are two competing lawsuits, the first filed has priority."). "There must, however, be sound reasons that would make it unjust or

inefficient to continue the first-filed action." *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398 (D. Mass. 1996). The party objecting to jurisdiction in the first-filed forum must "carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citing *Haydu*, 657 F.2d at 1174).

In 1993, the Federal Circuit issued a seminal case in the application of the first-filed doctrine. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931 (Fed. Cir. 1993), *abrogated on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995). In *Genentech,* the district court dismissed the first-filed declaratory judgment action in favor of a patent infringement action filed one day later in California. The Federal Circuit reversed:

> We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise. . . . The general rule favors the forum of the first-filed action, whether or not it is a declaratory action.

*Id.* at 937. In so doing, the Federal Circuit established a first-to-file presumption in patent cases.

Although issued in the context of a claim for patent infringement, *Genentech* has been cited as a baseline for applying the first-filed doctrine in trademark cases. *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed.

Cir. 1995) (citing *Genentech*, 998 F.2d at 937) (noting that the Federal Circuit in *Genentech* rejected a rule that "a first-filed action for declaration of noninfringement of a trademark should yield to a later-filed infringement suit."). Although some courts may apply the first-filed rule more rigorously in patent cases than trademark disputes, courts have still recognized that "[t]he court of first filing has been held to be the proper place to resolve a first to file dispute in a case… involving a trademark dispute." *Daimler Chrysler Corp. v. Gen. Motors Corp.*, 133 F. Supp. 2d 1041, 1043 (N.D. Ohio 2001); *see also Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002) ("As such, where two identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred, even if it is a request for a declaratory judgment."). "In intellectual property cases, the 'fact that [plaintiff's] action is for declaratory relief does not bar the application of the first-filed presumption.'" *Reebok Int'l Ltd. v. Dunkadelic, Inc.*, No. CIV.A. 03-CV-11471-G, 2004 WL 413266, at *4 (D. Mass. Mar. 2, 2004) (noting that the presumption in favor of the first-filed action in a trademark infringement suit was not overcome because first-to-file plaintiff filed in its home state, did not race to the courthouse or mislead defendants, and defendants failed to show sufficient convenience of second-filed forum or financial burden of first-filed Massachusetts forum); *see also Genentech*, 998 F.2d at 938; *Holmes Grp., Inc.*, 249 F. Supp. 2d at 15.

Following Genentech, courts have frequently dismissed subsequently filed infringement actions in favor of first-filed declaratory judgment actions filed by those who were threatened with infringement.[2] This Court has also applied the Genentech doctrine, recognizing that "[t]he general rule favors the forum of the first-filed action, whether or not it is a declaratory judgment action." *Biogen, Inc.*, 954 F. Supp. at 398; *see also Dunkadelic, Inc.*, 2004 WL 413266, at *4. In *GSI Lumonics, Inc. v. BioDiscovery, Inc.*, this Court applied the first-filed rule of *Genentech*, refusing to dismiss a first-filed declaratory judgment action in Massachusetts in favor of a second-filed California action for infringement of the same copyrights. 112 F. Supp. 2d at 105. The court noted that the first-filed plaintiff's action was not barred as an exception to the first-filed rule simply because it sought a declaratory judgment. *Id.* Among other reasons, "[Plaintiff's] decision to file but not to serve its suit immediately manifested a desire on its part both to avoid litigation if at all possible and to attempt to secure the convenience of a Massachusetts forum if litigation was required." *Id.*; in *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, this Court denied a motion to transfer venue of a declaratory judgment action to the court of a second-filed action which alleged,

---

[2] *E.g.*, *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233 (D. Conn. 2003); *R.J. Reynolds Tobacco Co. v. Star Scientific, Inc.*, 169 F. Supp. 2d 452 (M.D.N.C. 2001); *Kleninerman v. Luxtron Corp.*, 107 F. Supp. 2d 122 (D. Mass. 2000); *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264 (C.D. Cal. 1998); *Chiron Corp. v. Advanced Chemtech, Inc.* , 869 F. Supp. 800 N.D. Cal. 1994); *Brower v. Flint Ink Corp.*, 865 F. Supp. 564 (N.D. Iowa 1994); *Agridyne Techs., Inc. v. W.R. Grace & Co.*, 863 F. Supp. 1522 (D. Utah 1994).

among other things, patent and trademark infringement and unfair competition claims. 249 F. Supp. 2d at 15. The infringement claims in the second-filed action were identical to those in the first action. *Id.* The first-filed venue is appropriate in absence of a showing of special circumstances or that the court of the second-filed action is a "substantially more convenient forum." *Id.* at 19.

Even before *Genentech*, this Court followed a similar rule. In *United Fruit Co. v. Standard Fruit & S. S. Co.*, the United States District Court for the District of Massachusetts applied the first-filed rule to enjoin a defendant from pursuing its second-filed declaratory judgment action in Louisiana while it decided the earlier-filed trademark infringement action. 282 F. Supp. 338, 340 (D. Mass. 1968). This Court noted that "unless there are unusual circumstances, the court should apply the 'general rule that the party filing later in time should be enjoined from further prosecution of his suit.'" *Id.*

Dismissal is proper where the later-filed case addresses the same subject matter as the first-filed case. *See Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409-11 (E.D. Pa. 2008) (dismissal of second filed action appropriate under the first-to-file rule). In the present case, both this action and the first-filed Alabama declaratory judgment action address the same trademarks and trade dress. The parties are essentially the same, although Defendant Natasha McCrary is not a party to the Alabama action, the first-to-file rule is applicable even where the

parties are not identical. *Shire U.S.*, 543 F. Supp. 2d at 409 (citing *Genentech*, 998

F.2d at 937–38) ("A rigid requirement that there be identical parties in the actions

at issue would be at odds with the rule's flexible nature, which the Federal Circuit

has emphasized."); *Silver Line Bldg. Prod. LLC v. J-Channel Indus. Corp.*, 12 F.

Supp. 3d 320, 326 (E.D.N.Y. 2014). Accordingly, the Alabama action, filed seven

(7) days before this action, is the first-filed action, and the first-to-file rule applies.

## A. No Special Circumstances Defeat the First-to-File Rule Here.

While *Genentech* and later cases recognize limited exceptions to the first-

filed rule when it would be "unjust or inefficient to continue the first-filed action,"

such exceptions do not apply here.  *Genentech*, 998 F.2d at 938.  "There must [] be

sound reason that would make it unjust or inefficient to continue the first-filed

action. Such reason may be the convenience and availability of witnesses, or

absence of jurisdiction over all necessary or desirable parties, or the possibility of

consolidation with related litigation, or considerations relating to the real party in

interest." *Id*. No such reasons exist here. A convenience and fairness evaluation

strongly favors Alabama as the more just and efficient forum.

### 1. Neither convenience of the parties nor witness availability presents a "special circumstance."

1818 Farms resides in the U.S. Northern District of Alabama with locations

in Mooresville, Alabama and Huntsville, Alabama. (Exhibit A, ¶ 3.)  1818 Farms

does not own or lease any real property in Massachusetts or operate any facilities

there. (Exhibit A, ¶ 5.)  All of 1818 Farms' twelve employees having knowledge of the product development, design, manufacturing, marketing, sales, and profits are in Alabama. (Exhibit A, ¶ 4.)   None are in Massachusetts.  All of 1818 Farms' documents relating to product development, design, manufacturing, marketing, sales and profits are in Alabama as well.  (Exhibit A, ¶¶ 7 and 8.)  Thus, all of 1818 Farms' materials and things related to this case are in Alabama.

While Plaintiff may argue that this Court is a more convenient forum because Plaintiff's officers and employees who may be witnesses reside within the state of Massachusetts, the same could be said of McCrary and the officers and employees of 1818 Farms with respect to the United States District Court for the Northern District of Alabama and Defendants' first-filed Alabama action.  But even if Plaintiff argued that the convenience and fairness factors are equal between the two courts, such that Massachusetts is convenient for Plaintiff and the Alabama court is convenient for Defendants, many courts have found such equivalency of convenience makes this a non-factor and insufficient to overcome the strong presumption in favor of the first-filed action.  *See e.g., Chiron Corp. v. Advanced Chemtech, Inc.,* 869 F. Supp. 800, 802 (N.D. Cal. 1994) (noting that "it will be inconvenient for certain witnesses no matter where the action proceeds"); *Brower v. Flint Ink Corp.,* 865 F. Supp. 564, 568 (N.D. Iowa 1994) ("Allowing this second-filed action to continue would merely shift the burden of litigating in a

'foreign' forum from Brower to Flint, just as a transfer of this Iowa action to Michigan would merely shift the burden of litigating in a 'foreign' forum from Flint to Brower; therefore, the court concludes that the 'balance of convenience' is flat."). Those principles dictate that the parties' claims be litigated in the venue of the first-filed action in Alabama.

In addition, the first-to-file rule is not defeated simply because this second-filed action involves a defendant, Natasha McCrary, who is not a party to the first-filed Alabama action. Critically, as argued below, McCrary is not a proper party to this action. Accordingly, Plaintiff's improper decision to name McCrary as a defendant fails to distinguish this case from the Alabama action. Moreover, the first-to-file rule remains applicable even where there is not perfect identity of parties. *See, e.g., Sony Elecs., Inc. v. Orion IP, LCC*, No. C.A. 05-255, 2006 WL 680657 at *1 (D. Del. March 14, 2006) (citing *Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp.*, 125 F.2d 1008, 1009 (3d Cir. 1942)). In short, there is no basis for inferring that litigating this case in Alabama would be sufficiently "unjust or inefficient" to ignore the well-established first-filed doctrine.

### 2. There is No Evidence of 1818 Farms Racing to the Courthouse or Forum Shopping.

Evidence that a plaintiff in a first-filed action raced to the courthouse may constitute "special circumstances" sufficient to constitute an exception to the first-to-file rule. *See Holmes Grp., Inc.*, 249 F. Supp. 2d at 16; *Kleinerman v. Luxtron*

*Corp.*, 107 F. Supp. 2d 122, 124 (D. Mass 2000). Plaintiff has accused 1818 Farms of bad faith tactics because 1818 Farms allegedly had notice of Plaintiff's intention to file suit and "raced to the courthouse first." (See Doc. 1 at ¶ 30.) Such allegations are false.

Initially, while 1818 Farms was a under a shadow of threatened trademark infringement litigation based on Plaintiff's repeated threats to sue, Defendants had no notice of when such lawsuit might be filed. Plaintiff threatened to sue 1818 Farms in each of the 1st (October 11, 2017), 2nd (December 8, 2017), 3rd (December 22, 2017) and 4th (January 17, 2018) PISC Letters, each time providing a deadline for 1818 Farms' response. After receiving 1818 Farms' respective responses, each one rejecting Plaintiff's demands, Plaintiff made the conscious decision to not proceed with a lawsuit, despite the passage of its arbitrary deadlines. Further, after 1818 Farms' rejections, Plaintiff took no action and did not communicate with 1818 Farms for long stretches of time (62-days in total) during which Plaintiff had ample time to be the first party to file a lawsuit.[3] For example, as described above:

1) Pursuant to a letter dated October 27, 2017, to Plaintiff's counsel, Holland denied that 1818 Farms infringed any Plaintiff right and voiced

---

[3] 1818 Farms is not the party that effected delay here. Indeed, 1818 Farms responded to each of Plaintiff's letters within the time period specified by Plaintiff, each time with a substantive response and/or counteroffer, while Plaintiff variously took 12-51 days to provide any response.

1818 Farms' refusal to comply with the demands of the 1st PISC letter. PISC made no response for 35-days after its own provided deadline, and filed no lawsuit during this period.

2) Pursuant to an email dated December 7, 2017, to Plaintiff counsel, Holland communicated that 1818 Farms disagreed with many of Plaintiff's assertions, but that 1818 Farms was amenable to resolving the dispute by adopting new packaging for its toiletries. Plaintiff made no response for 15-days, and then on December 22, 2017, rejected 1818 Farms' counterproposal and once against threated to bring a lawsuit. Despite PISC's threat, and the long delay, no lawsuit was filed during this period.

3) Pursuant to a letter dated January 5, 2018, to Plaintiff's counsel, Holland again denied that 1818 Farms infringed any Plaintiff right and communicated that 1818 Farms was not agreeable to at least one of the six "material" settlement terms proposed by Plaintiff in its December 22nd communication. Plaintiff made no response for 12-days, and then threatened to sue 1818 Farms if it did not immediately change its mind about the settlement amount. Plaintiff once again did not file any lawsuit.

Even after repeated delays by Plaintiff totaling 62 days, 1818 Farms did not "race" to the courthouse. Rather 1818 Farms reluctantly concluded that the parties were at an impasse and sought resolution through the courts only after Plaintiff unilaterally inserted material terms into a settlement agreement draft that were unacceptable to 1818 Farms (*e.g.*, a provision allowing for the filing of a consent judgment) and multiple unsuccessful phone calls with Plaintiff's counsel that underscored Plaintiff's refusal to compromise. (Exhibit B, ¶¶ 11-19.) The Alabama action was initiated to remove the cloud of infringement hanging over 1818 Farms and address Plaintiff's demand that 1818 Farms execute the consent judgment and permanent injunction document, not to undercut any particular filing deadline imposed by Plaintiff.[4] (*Id.*)

Furthermore, even if Defendants knew that Plaintiff's lawsuit in this Court was imminent, that knowledge would be immaterial. The fact that a party "knew of [the other's] intention to sue is inapposite, as this knowledge without more does not evidence bad faith." *Trustco Bank v. Automated Transactions*, LLC 933 F. Supp. 2d 668, 672 (D. Del. 2013) ("Preparations for litigation during negotiations are commonplace and the court concludes that there is no evidence of bad faith[.]"). Further, Defendants never misrepresented their intentions to negotiate,

---

[4] No Plaintiff-imposed deadline existed at the time of filing the Alabama action.

only to suddenly race to the courthouse to file a declaratory judgment action to avoid an inconvenient forum. *Holmes Grp., Inc.*, 249 F. Supp. 2d at 16.

The current circumstances are more in line with the decision in *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002 (8th Cir. 1993). In that case, the second-filer defendant American gave no indication a lawsuit was imminent, even though first-filer Northwest represented to American that it believed American's legal analysis was flawed and did nothing to make American believe the matter was moving towards resolution. *Id.* at 1006. Similarly, and as described above, here 1818 Farms did not file suit in this Court until 107 days after Plaintiff sent its first demand letter and after passage of each and every deadline set by Plaintiff had passed. During this 107-day period, 1818 Farms repeatedly represented to Plaintiff that it does not agree with Plaintiff's legal analysis, does not concede infringement and does not agree to all of the material settlement terms proposed by Plaintiff. As such, Plaintiff had ample opportunity and reason to file a lawsuit in its preferred forum prior to the filing of this action, but Plaintiff inexplicably chose not to do so. Furthermore, at the time this action was filed, no Plaintiff-imposed deadline existed. As the Eighth Circuit found in *Northwest Airlines*, Defendants are the first-filer, and neither acted in bad faith nor raced to the courthouse to preempt a suit. The purpose of the Declaratory Judgment Act is "to afford an added remedy to one who is uncertain [of] his rights and who desires

an early adjudication without having to wait until he is sued by his adversary." *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986). These are exactly the circumstances here. Accordingly, 1818 Farms was well within its rights to bring suit when and in the manner it did. The manner in which Defendants filed the Alabama action does not provide a basis for ignoring the first-to-file rule here.

## II. Dismissal is Appropriate Because Plaintiff's Claims Are Compulsory Counterclaims in The Alabama Action.

Each of the claims in Plaintiff's Complaint is a compulsory counterclaim in the Alabama action under Federal Rule of Civil Procedure 13(a), and should be dismissed. A counterclaim is compulsory if it "'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.'" *United Fruit Co*, 282 F. Supp. at 339 (quoting Fed. R. Civ. P. 13(a)). Rule 13(a) of the Federal Rules of Civil Procedure enjoy a broad interpretation. *Id.* "A transaction that is the foundation of a plaintiff's claim is not limited to the facts set forth, but include any logically related acts and conduct of the parties. Therefore, the phrases relating to compulsory counterclaims in subdivision (a) of Rule 13 have been afforded a broad and liberal construction." *Carter v. Pub. Fin. Corp.,* 73 F.R.D. 488, 491 (N.D. Ala. 1977).

Like the first-to-file rule, the policies of Rule 13(a) operate to prevent duplicative suits. *See United Fruit Co.*, 282 F. Supp. at 339. As explained in

*Genentech,* "the compulsory counterclaim rule is particularly directed against the failure of a party to assert a counterclaim in one action, followed by the institution of a second action wherein the counterclaim is the basis of the complaint." *Genentech*, 998 F.2d at 938.

The same "transaction or occurrence" underlies both 1818 Farms' claims in the Alabama action and each of Plaintiff's purported claims in this action. In fact, both actions focus on whether 1818 Farms has infringed the '999 Registration, the validity of the '999 Registration, and the Parties' attempted resolution of Plaintiff's allegations of infringement. (*Compare* Doc. 1 *with* Exhibit C.) At the very least, these claims are "logically related" to 1818 Farms' complaint filed in the Alabama action.

Courts have dismissed second-filed suits with a claim that should have been brought as a compulsory counterclaim in a first-filed action. *See Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003); *Intervet, Inc. v. Merial Ltd.*, 535 F. Supp. 2d 112, 115 (D.D.C. 2008). To the extent Plaintiff has any valid claims against 1818 Farms (it does not), such claims could and should have been brought in the first-filed Alabama action. Plaintiff's attempt to make an end run around Rule 13 should not be countenanced; this case should be dismissed.

### III. Plaintiff's Complaint Should Be Dismissed because this Court Lacks Personal Jurisdiction over the Defendants.

When a defendant challenges personal jurisdiction, the plaintiff has the burden of establishing a prima facie case thereof. *Dodora Unified Commc'n, Inc. v. Direct Info. Pvt. Ltd*., 379 F. Supp. 2d 10, 13 (D. Mass. 2005) (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)). Conclusory or unsupported allegations in the pleading are not sufficient to make this prima facie showing. *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 269 (D. Mass 2017); *Boit*, 967 F.2d at 675. Rather, a plaintiff is "obliged to adduce evidence of specific facts." *Foster-Miller, Inc. v. Babcock & Wilcox Can*., 46 F.3d 138, 145 (1st Cir. 1995).

Due process requires that Defendants have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted). To determine whether the exercise of personal jurisdiction is consistent with due process, the Court must assess "whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require that it conduct its defense in that state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3rd Cir. 2009) (quotation marks and citations omitted).

This Court may exercise two types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, PISC has not shown and cannot show that Defendants are subject to either general or specific personal jurisdiction in Massachusetts. Dismissal of Plaintiff's Complaint is proper pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**A.    There is no basis for specific jurisdiction.**

In its Complaint, Plaintiff alleges that this Court has personal jurisdiction over Defendants pursuant to the Massachusetts long-arm statute, M.G.L. c. 223A, § 3 (2011), on the following alleged bases:

> (a) 1818 transacts business and contracts to supply services or things in the Commonwealth by "own[ing] and operat[ing] an interactive website located at https://store.1818farms.com/ from which 1818 promotes, offers for sale, sells and distributes toiletries to residents of the Commonwealth of Massachusetts" (Complaint at 6);

> (b) McCrary "as the sole member, officer and director of 1818," is "the party in charge of and responsible for all actions relating to the transactions, events and occurrences that give rise to this complaint" (Complaint at 7);

> (c) "Substantial activities have occurred in Massachusetts that give rise to Plum Island's claims" (Complaint at 9); and

> (d) The actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive

act or practice pursuant to chapter 93A chapter 11 "occurred primarily and substantially" in Massachusetts.

(Complaint at ¶ 10.) All of these alleged bases are either factually incorrect or are insufficient to subject Defendants to personal jurisdiction in this forum.

### 1. The Massachusetts Long Arm Statute is Co-Extensive with the Limits of Due Process under the United States Constitution.

A "two-prong inquiry governs the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000). First, the Court must determine whether the defendant is amenable to process in the forum state under the state's long-arm statute, and second, whether maintenance of the suit would violate federal due process. *See id.; Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). Here, separate analysis of the Massachusetts long-arm statute is not necessary and the Court may proceed directly to a Constitutional analysis because the Massachusetts long-arm statute is "coextensive with the limits allowed by the United States Constitution." *Hannon v. Beard*, 524 F.3d 275, 278 (1st Cir. 2008).

### 2. Plaintiff has failed to meet the three-prong test to demonstrate specific jurisdiction over Defendants.

The First Circuit has adopted a three-part inquiry to determine whether a Court is authorized to assert specific jurisdiction over an out-of-state defendant. *Grice*, 280 F. Supp. 3d at 270 (citing *EMC Corp. v. Petter*, 104 F. Supp. 3d 127,

133 (D. Mass. 2015)). First, the claims must relate to or arise out of the defendant's contacts in the forum; second, the defendant's contacts must constitute "purposeful availment of the benefits and protections" of the forum's laws; and third, the exercise of jurisdiction must be reasonable under the circumstances. *Id*. A plaintiff must prevail on all three prongs to establish specific jurisdiction. *Id*.

The first prong of "relatedness" requires a "demonstrable nexus" between the claims and the defendant's in-forum contacts. *Mukarker v. City of Phila.*, 178 F. Supp. 3d 8,11 (D. Mass. 2016); *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp*., 960 F.2d 1080, 1089 (1st Cir. 1992) ("[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case."). Moreover, "contacts should be judged when the cause of action arose." *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg*., 295 F.3d 59, 66 (1st Cir. 2002). Here, Defendants lack the necessary forum-based activities to support the requisite nexus for specific jurisdiction for any count of the Complaint.

Initially, with regard to individual Defendant McCrary, the Complaint does not parse out the individual conduct of 1818 Farms and McCrary that would allegedly give rise to personal jurisdiction. Rather, Plaintiff simply imputes liability to McCrary based on her position as "the sole member, officer and director

of 1818" in which she "personally direct[ed] all actions in concert with 1818." (Doc. 1 at ¶¶ 40, 46, 49, 54, 62, 69, 73, 76, 85, 103-105.) This is insufficient.

Unless a plaintiff can show that the defendants have not maintained the proper distinction among individuals and corporations such that one may be viewed as the alter ego of the other, this Court has held that an individual defendant should not be subject to personal jurisdiction based upon actions undertaken within the scope of her employment. *Iovate Health Sciences, Inc. v. Allmax Nutrition, Inc.*, 549 F. Supp. 2d 127, 128-29 (D. Mass. 2008). It is manifestly clear that "jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F. Supp. 1106, 1111 (D. Mass. 1983). For jurisdictional purposes, employees are judged by whether they were "primary participants in the alleged wrongdoing intentionally directed at the forum." *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 279–80 (D. Mass. 2008) (quoting *La Vallee v. Parrot–Ice Drink Prods. of Am.*, 280 Inc., 193 F. Supp. 2d 296, 301 (D. Mass. 2002))).

Plaintiff has set forth no basis for this Court to pierce the corporate veil. Plaintiff has not alleged a single fact establishing that 1818 Farms is McCrary's alter ego or that she and the company were essentially one and the same. Courts "routinely" grant 12(b)(2) motions by individuals where the allegations about the

individual's participation in the specific matter at hand are "broadly worded and vague." *See, e.g., Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015). Here, far from even "vague" or "conclusory" allegations, Plaintiff has not made *any* allegations regarding individual activities conducted by McCrary relevant to the causes of action, let alone activities "intentionally directed at the forum." Where such evidence is lacking, jurisdiction cannot be based simply on the fact an individual is an owner of a legally distinct business entity.

Nor has Plaintiff pointed to any meaningful in-forum contacts by 1818 Farms, LLC. 1818 Farms manufactures all Man of the Farm Grooming Can products outside of Massachusetts. (Exhibit A, ¶ 23.) All of 1818 Farms' corporate decisions are made in Alabama, including all decisions relating to the development of 1818 Farms' products and its packaging, all marketing strategies, and all decisions to obtain trademarks. (Exhibit A, ¶ 10.) Therefore, any conduct by 1818 Farms relating to Plaintiff's federal and common law trademark claims (Counts I – VI) occurred outside of the forum of this District and the State of Massachusetts. As established in this Circuit, any alleged conduct by Defendants that occurred outside of Massachusetts does not constitute forum-based contact *even if* that conduct would have a foreseeable effect in Massachusetts. *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001).

Turning to Plaintiff's claims for breach of contract (Count VII), Fraud (Count VIII), and Unfair and Deceptive Trade Practices under Massachusetts law (Count IX), the Complaint once again cannot point to a single act by Defendants that actually occurred within Massachusetts. To support its claims, the Complaint variously mentions Defendant 1818 Farms' use of its "The Man of The Farm Grooming Can" mark (stemming from 1818 Farms' corporate decisions made in Alabama) (Doc. 1 at ¶ 109), the filing of a lawsuit in the U.S. District Court for the Northern District of Alabama (a foreign jurisdiction) (Doc. 1 at ¶¶ 97-99, 110, and 113), and settlement negotiations —which did not result in a meeting of the minds or a signed settlement agreement— stemming from Plaintiff's cease and desist letter sent to Defendants' Alabama residence (Doc. 1 at ¶¶ 77-82, 86-96, 111-112).

In its attempt to establish jurisdiction, Plaintiff appears to rely heavily on the existence the parties' unsuccessful settlement discussions. These discussions cannot bear the weight Plaintiffs place on them. Plaintiff does not and cannot allege that Defendants' involvement in the negotiations took place in Massachusetts. To the contrary, Plaintiff merely alleges that negotiations took place with Defendants, who are located in Alabama. (*See* Exhibit A, ¶¶ 2, 6.) The location of negotiations is "vitally important" to the jurisdictional inquiry, because "if the negotiations of an agreement occurred outside the forum state, their

existence cannot serve to bolster the argument for the assertion of jurisdiction in the forum." *United Elec., Radio & Mach. Workers*, 960 F.2d at 1089.

Plaintiff also summarily states that Defendants are engaged in trade and/or commerce within the meaning of Massachusetts General Laws chapter 93A §§ 2 and 11. As described in greater detail below, Plaintiff has presented no allegations that Defendants' sales specifically target Massachusetts residents – only that such sales have occurred. In fact, they present no factual allegations of even a single alleged sale to a Massachusetts resident, only assumptions and conclusions.

Contrary to Plaintiff's assertions, not one alleged act by Defendants mentioned in the Complaint occurred within the Commonwealth of Massachusetts. Accordingly, a showing of relatedness cannot be made for either Defendant, and this prong of the specific jurisdiction analysis fails. The fact that no prong of this inquiry has been met is sufficient to defeat specific jurisdiction over Defendants. Nevertheless, as discussed below, it is clear that the remaining prongs are also deficient.

The lynchpin of the specific jurisdiction analysis is the second prong, purposeful availment. *Genzyme Corp. v. Shire Human Genetic Therapies, Inc.*, 906 F. Supp. 2d 9, 18 (D. Mass. 2012). The inquiry when conducting this analysis focuses on the defendant's *intentionality* and is "satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he

should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Swiss Am. Bank*, 274 F.3d at 623-24. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).

Plaintiff has presented no allegations that show sales purposefully made to Massachusetts residents, or specific solicitations directed at the Commonwealth. Rather, Plaintiff has offered only one real contact between Massachusetts and 1818 Farms, 1818 Farms' use of a website that is accessible from everywhere in the world, including Massachusetts. (*See* Doc. 1 at ¶ 6.) Although 1818 Farms does maintain a website from which it sells its products, mere electronic presence is not enough to establish purposeful availment. *See, e.g.*, *Sun Life Assur. Co. of Can. v. Sun Bancorp, Inc.*, 946 F. Supp. 2d 182, 190-91 (D. Mass. 2012) (rejecting argument that use of alleging infringing trademark on website viewable in forum amounts to purposeful availment); *Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC*, 196 F. Supp. 3d 123, 130-31 (D. Mass. 2016) (finding persuasive the Seventh Circuit's statement that where a defendant "merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.") (citing *Be2 LLC v. Ivanov*, 642 F.3d 555,

558-59 (7th Cir. 2011).  This Court's decision in *Photographic*, a copyright infringement case, is particularly analogous to the facts here.  As in that case, Defendant 1818 Farms has a brick-and-mortar location out-of-state from which it conducts most of its consumer transactions.  196 F. Supp. 3d at 131.  Specifically, 1818 Farms is a family-owned, working farm in Mooresville, Alabama, where it runs workshops, hosts events, rents space, and sells products.  Further, as in *Photographic*, 1818 Farms has a commercial website which does not target Massachusetts in any way, on which it sells hundreds of discrete products, only one of which is the subject of Plaintiff's trademark infringement allegations. Nor do Defendants engage in "advertising, marketing, or other activity evincing intentionality."  *Id*. While the *Photographic* Court ultimately rejected jurisdiction on the basis of it being unreasonable, it did so acknowledging the weakness of a purposeful availment position based on website accessibility, further stating that:

> [T]here is a substantive social policy against exercising personal jurisdiction in this case because it would hale the defendant into court in a distant forum merely because its website is accessible in every state. It would have the adverse effect of discouraging small mom-and-pop retailers, such as the defendant, from creating websites for their local customers for fear of opening themselves up to [] litigation across the nation.

*Id*. at 132. Such limited contact with Massachusetts is not sufficient to find "purposeful availment" and, accordingly, the second prong of analysis fails.

The last prong is directed to whether the exercise of jurisdiction of reasonable, in light of the First Circuit's "gestalt factors," namely: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *EMC*, 104 F. Supp. 3d at 134, n.4.

Here, the factors generally fall against Massachusetts or favor no particular jurisdiction. Initially, both Defendants and all of their relevant witnesses and documents are located in Alabama (*see* Exhibit A, ¶¶ 9, 26), and therefore, the first factor strongly disfavors conducting this case in Massachusetts. With regard to the second factor, any interest Massachusetts may have in its citizen company is outweighed by the fact that the relevant conduct (design and manufacture of allegedly infringing products, development of advertisement and marketing strategy, and discussions between the parties) occurred almost entirely in Alabama, not Massachusetts. (*See id*. ¶¶ 24–30.) Turning to the third and fourth factors, while deference may be given to a plaintiff's choice of forum, Plaintiff's federal trademark claims can be conveniently and effectively addressed by any federal district court, and therefore, no jurisdiction is particularly favored. As to the fifth and final factor, Plaintiff's federal trademark claims do not implicate any of

Massachusetts' social policies. With these factors taken in their totality, the "reasonableness" prong also favors resolution of this matter outside this forum, and particularly, in Alabama, where the first-filed action is pending.

**B.     This Court Lacks General Jurisdiction Over the Defendants.**

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924.  Defendant McCrary is not domiciled in Massachusetts, and 1818 Farms is not "at home" in Massachusetts.

For corporate defendants, the jurisdictional inquiry "calls for an appraisal of a corporation's activities in their entirety" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 762 n.20 (2014)).  Thus, the Supreme Court has made clear that a corporation will not be deemed "essentially at home" in "every… State in which [its] sales are sizeable." *Daimler*, 134 S. Ct. at 761.  Rather, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 760.

As set forth above, 1818 Farms' contacts with Massachusetts are meager, if they exist at all.  Indeed, all of 1818 Farms' assets are located in Alabama, and its

day-to-day operations are conducted from its office in Alabama. (Exhibit A, at ¶ 7.) And none of 1818 Farms' suppliers or vendors are or have ever been based in Massachusetts. (*Id.* at ¶ 8.) Because of 1818 Farms' lack of material contacts with Massachusetts, it is clear that 1818 Farms does not have "sizeable" sales or operate a "continuous and systematic" portion of its business in Massachusetts as to make it "at home" in this forum. *See Daimler*, 134 S. Ct. at 761. 1818 Farms should therefore not be subject to general personal jurisdiction in the Commonwealth of Massachusetts.

With regard to an individual, in addition to domicile, a court may also assert general jurisdiction when the person offers explicit consent, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011), or is physically present in the forum state, *Burnham v. Superior Court of California, Cnty. of Marin*, 495 U.S. 604, 619 (1990). Neither is present here.

Again, as with the corporate Defendant, McCrary has resided in Alabama for the last five years and has no material contacts with Massachusetts. (*See*, supra, pp. 6-9.) Tellingly, Plaintiff has not made any contrary allegations, or any allegations with regard to whether McCrary consented to the forum or is physically present in the forum – which she is not. (*See* Doc. 1 at ¶ 3.) Accordingly, there is no general jurisdiction in this forum over McCrary, and Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(2).

**IV.    Alternatively, this Case Should be Transferred to the Venue of the First-Filed Action.**

Under 28 U.S.C. § 1404(a), a district court may transfer an action "for the conveniences of the parties and witnesses" as well as "in the interest of justice." 28 U.S.C. § 1404(a).   The convenience of the parties and witnesses and interests of justice strongly favor transfer of this action to the Northern District of Alabama, where the first-filed Alabama action is pending. In determining whether to transfer an action, a court may consider: (i) the plaintiff's choice of forum, (ii) the relative convenience of the parties (iii) the convenience of the witnesses and location of documents, (iv) any connection between the forum and the issues, and (v) the public interests at stake. *Holmes Grp., Inc.*, 249 F. Supp. 2d at 15. Transfer to the northern District of Alabama is proper.

**A.    The Interests of Justice Favor Transfer of this Action to the Northern District of Alabama.**

It is common for cases to be transferred to the venue of the first-filed action. *Biolitec, Inc. v. AngioDynamics, Inc.*, 581 F. Supp. 2d 152 (D. Mass. 2008). The interests of justice are promoted by avoiding instances in which "two cases involving precisely the same issues are simultaneously pending in different District Courts," which "leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960); *see also Johnson v. New York Life Ins. Co.*, No, 12-11026-MLW, 2013

WL 1003432, at *2 (D. Mass. Mar. 14, 2013) ("Judicial economy and the avoidance of inconsistent judgments are prominent among the princip[al] elements of systemic integrity."); *Gastineau v. Gifford*, No. 11-11096-RWZ, 2011 WL 4381501, *1 (D. Mass. Sept. 19, 2011) (noting that "wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs"). As noted above, the first-filing of the Alabama action justifies maintaining this case in the Alabama, and Plaintiff has not alleged any facts showing that litigation should continue in this District and defeat the application of the first -to-file rule. Thus, the interests of justice would be served by transferring this case to the Northern District of Alabama, the first-filed forum.

**B.    The Convenience of Parties and Witnesses Favors Transfer of this Action to the Northern District of Alabama.**

As noted above, convenience of the parties and witnesses favors transfer. Defendants, key evidence and witnesses are located in Alabama, the first-filed forum. Transfer is appropriate to avoid risk of duplicative discovery and based on locations of key witnesses and the relevant documentation and records. *DuPont Pharms. Co. v. Sonus Pharms., Inc.*, 122 F. Supp. 2d 230 (D. Mass. 2000).

These factors are present here. 1818 Farms resides in the U.S. Northern District of Alabama with locations in Mooresville, Alabama and Huntsville, Alabama. (Exhibit A, ¶ 3.) McCrary also resides in Alabama. (*Id.* at ¶ 2.)

Defendants have no physical presence in Massachusetts. (*Id.* at ¶¶ 4, 6, 9.) Neither McCrary nor 1818 Farms own or lease any real property in Massachusetts. (*Id.* at ¶¶ 4, 9.) They do not or operate any facilities there. (*Id.* at ¶¶ 4, 4, 12.) All of 1818 Farms' twelve employees having knowledge of the product development, design, manufacturing, marketing, sales, and profits are in Alabama. (*Id.* at ¶ 9.) None are in Massachusetts. (*Id.*) All of 1818 Farms' relevant documents relating to product development, design, manufacturing, marketing, sales and profits are in Alabama as well. (*Id.* at ¶ 26.) Thus, all of 1818 Farms' materials and things related to this case are in Alabama. The convenience of parties and witnesses weigh in favor of transfer.

1. **Plaintiff's choice of forum, the connection between this forum and the issues, and the public interests at stake are neutral factors, and do not weigh against transfer.**

Aside from Plaintiff's presence, the activities and products that form the basis of Plaintiff's claims have little to no connection to this forum. The allegedly infringing activities, products, marketing, and parties are located in Alabama, not Massachusetts. (Exhibit A, ¶¶ 9, 26.) This Court has recognized that generally "there is a strong presumption in favor of plaintiff's choice of forum." *See U.S. ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (citing *Coady v. Ashcraft–Gerel,* 223 F.3d 1, 11 (1st Cir. 2000)). Plaintiff's choice of forum in its second-filed action in this Court does not

outweigh 1818 Farms' choice of forum in the first-filed action. *See Genentech*, 998 F.2d at 938. In addition, Plaintiff has not identified any public interest sufficient to defeat the first-to-file rule here. These factors are neutral, and thus do not preclude transfer of this action to the first-filed Alabama forum.

## V.     If Dismissal or Transfer of this Case is not Appropriate, this Case Should be Stayed Pending Determination of Proper Venue in the Alabama Action.

If this Court is not persuaded that dismissal of Plaintiff's Complaint or transfer to the venue of the first-filed Alabama action is appropriate, Defendants request a stay of this action until the later of either an Order from the United States District Court for the Northern District of Alabama resolving the question of proper venue of the parties' dispute or one hundred twenty (120) days. Where there is a likelihood of substantial overlap between two lawsuits pending in two federal courts, this Court has stated that "a stay of the second filed action" is "appropriate in order to permit the court of the first filing to rule on the motion to transfer." *Bos. and Me. Corp. v. United Trans. Union*, 110 F.R.D. 322, 330 (D. Mass. 1986) (reasoning that doing so is desirable to minimize duplication of effort by the courts."). Further, a stay will help ensure that inconsistent determinations by this Court and its sister Court will be avoided, such as if both Courts retain the respective cases and parallel actions persist.

A motion to determine proper venue is currently pending in the Alabama action. (Exhibit D, 1818 Farms' "Venue Motion".) As noted above, the first-filed court should decide whether an exception to the first-to-file rule applies. *See EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 126 (D. Mass. 2012); *see also Cianbro Corp.*, 814 F.2d at 11 ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision."); *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 623 F. Supp. 912, 916 (D.P.R. 1985) (stating that "the district court hearing the first-filed action should determine whether special circumstances dictate that the first action be dismissed in favor of a later-filed action."); *Apex, LLC v. 24 Hour Fitness, USA, Inc.*, Case No. 08-169, 2008 WL 4158915, at *2 (D.R.I. Sept. 9, 2008).

Here, if a stay is entered, at least one of these conditions will occur: 1) the United States District Court for the Northern District of Alabama will determine that an exception to the first-to-file rule is warranted and transfer the first-filed action to this Court; or 2) the Northern District of Alabama will determine that no exception applies, and will retain the first-filed Alabama action.[5] Duplicative litigation and waste is avoided, and economy is preserved by entry of a stay.

---

[5] The Northern District of Alabama may also enter an injunction against Plaintiff based on 1818 Farms' Venue Motion, enjoining it from proceeding in this litigation.

## VI. Plaintiff's Complaint Fails To State A Claim Against McCrary.

In the unlikely event that this Court finds that the first-to-file rule does not require dismissal, that this Court has jurisdiction over the Defendants, and that neither a stay nor a transfer is warranted, it should nevertheless dismiss each and every one of Plaintiff's claims against Defendant McCrary.

### A. Claims Based on Mere Conjecture Fail to Satisfy Rule 12(b)(6).

It is now settled that "[t]o survive a motion to dismiss, the complaint must state a claim that is plausible on its face." *Gronk Nation, LLC v. Sully's Tees, LLC*, 37 F. Supp. 3d 495, 497 (D. Mass. 2014). (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34 (1st Cir. 2015) (quoting *S.E.C. v. Tambone,* 597 F.3d 436, 442 (1st Cir. 2010)).

"The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles[:]

> "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' "is

> inapplicable to legal conclusions,' and '[t]hreadbare
> recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice.'"... "'Second,
> only a complaint that states a plausible claim for relief
> survives a motion to dismiss' and '[d]etermining whether
> a complaint states a plausible claim for relief will... be a
> context—specific task that requires the reviewing court
> to draw on its judicial experience and common sense.'"

*DISH Network LLC v. World Cable Inc.*, 893 F. Supp. 2d 452, 460 (E.D.N.Y.

2012) (quoting *Harris v. Mills*, 572 F. 3d 66, 72 (2d Cir. 2009) and *Iqbal*, 556 U.S.

at 678). Plaintiff fails to allege facts sufficient to support any claims against

McCrary as an individual. Plaintiff's claims against McCrary, therefore, should be

dismissed.

**B.  Plaintiff's Clams against McCrary Improperly Seek to Hold her
Liable for the Actions of 1818 Farms and Fail as a Matter of Law.**

Plaintiff has named McCrary as a Defendant in all of its claims. These

claims and McCrary should be dismissed because McCrary, an individual, cannot

and should not be held liable for the actions of 1818 Farms, the company of which

she is a part. All of Plaintiff's claims against the McCrary as an individual stem

from actions allegedly performed by 1818 Farms, and should be dismissed as to

McCrary for this reason alone.

Alabama law, like Massachusetts law, protects individuals who are members

and managers of a limited liability company from personal liability for the

company's actions. *See* Ala. Code § 10A-5A-3.01; *cf.* Mass. Gen. Laws ch. 156C

§ 22. Although the corporate veil may be pierced in some circumstances, it is a remedy that only is appropriate in "rare particular situations [in order] to prevent gross inequity." *Smith v. Shining Rock Golf Cmty., LLC*, No. 20061510B, 2007 WL 2110958, at *2 (Mass. Super. June 20, 2007) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 620 (1968)). There are twelve factors relevant to determining whether such a situation exists, namely:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.

*Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728, 733 (1991) (quoting *Pepsi–Cola Metro. Bottling Co. v. Checkers, Inc.,* 754 F.2d 10, 14–16 (1st Cir. 1985)). A showing that veil piercing is appropriate usually involves a showing that there is an "element of dubious manipulation and contrivance, finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing." *Shining Rock Golf Cmty.*, 2007 WL 2110958, at *3. Further, "[s]ingle-shareholder corporations and limited liability companies are not de facto

illegal or inherently a sham," and there must be "some allegation of deception or confusion about the status" of the parties to justify piercing the corporate veil. *Id.*

Here, Plaintiff has provided nothing more than conclusory, blanket allegations against McCrary. Most of the purported actions are alleged to have been done by 1818 Farms. For example, in its recitation of "Facts Common to All Counts," Plaintiff alleges that 1818 Farms engaged in: 1) marketing activities for its allegedly infringing products (Doc. 1, ¶ 24, 31); 2) negotiations with Plaintiff's counsel through 1818 Farms' own attorneys (*Id.*, ¶ 27–30, 34-35); and 3) preparing and filing the Alabama action (*Id.*, ¶ 30–31.) McCrary is not implicated by any of these allegations.

The allegations of Plaintiff's complaint premise McCrary's relationship to this action exclusively on conclusory statements of her involvement and role within 1818 Farms. (*See* Doc. 1, ¶¶ 7, 40, 46, 54, 62, 69, 73, 76, 85, 103, 104, 105). Such conclusory allegations do not demonstrate confusion or deception by McCrary with regard to the distinction between her and 1818 Farms. Neither do these allegations suggest that this is one of the rare situations when the corporate veil must be pierced "[in order] to prevent gross inequity." *Shining Rock Golf Cmty.*, 2007 WL 2110958, at *3. To the contrary, Plaintiff's allegations demonstrate that there is no confusion or deception about the identities of McCrary

and 1818 Farms because Plaintiff alleges that McCrary "was personally directing all actions *in concert with 1818*." (Doc. 1, ¶¶ 76, 85.)

Nor does the Complaint show that piercing the veil is appropriate under the 12 *Evans* factors. Although Plaintiff flatly alleges McCrary's control and sole-membership in 1818 Farms, (*see id.*, ¶¶ 7, 40, 46, 54, 62, 69, 73, 76, 85), such allegations are conclusory, without providing even a single factual allegation of McCrary's personal activities. Even if Plaintiff has arguably alleged common ownership or pervasive control, without any supporting facts, such conclusions do not amount to a situation of "gross inequity" that would warrant the "rare" remedy of veil piercing against McCrary. *See Culley v. Cato*, No. 064079, 2007 WL 867043, at *5 (Mass. Super. March 5, 2007) (dismissing complaint against individual defendants when facts supporting any of the *Evans* factors were absent).

Tellingly, the Complaint contains no allegations supporting *Evans* factors (3) through (12.) *Cf. Evans*, 30 Mass. App. Ct. at 733. Accordingly, Plaintiff's Complaint provides no basis for McCrary's liability with respect to any of the ten purported claims (Counts I–X) it attempts to assert, and McCrary's dismissal from this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate.

# CONCLUSION

Plaintiff has created a forum dispute by filing this action after it received notice of the Alabama action. This is exactly what the first-filed doctrine was designed to prevent. This Court should apply the presumption of the first-filed case rule and dismiss Plaintiff's duplicative Complaint. Alternatively, the Court should enter an order transferring this action to the United States District Court for the Northern District of Alabama, the venue of the first-filed action. The fact that PISC's claims are compulsory counterclaims, that McCrary is not subject to personal jurisdiction, and that the Complaint fails to state claims against her further mandates that result. If this Court finds dismissal or transfer are inappropriate, then this Court should enter an Order staying this action pending resolution of the question of proper venue in the Alabama action.

**WHEREFORE**, 1818 Farms respectfully requests the Court to enter an Order dismissing Plaintiff's Complaint and for all other just and proper relief.

DATED: March 22, 2018

<div style="margin-left:40%">

Respectfully submitted,
*/s/ Harvey J. Wolkoff*
Harvey J. Wolkoff (BBO #532880)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Avenue
Boston, MA 02199
Tel. (617) 712-7100
Fax (617) 712-7200
harveywolkoff@quinnemanuel.com

</div>

OF COUNSEL:
Walter A. Dodgen (ASB-5507-G70W)
MAYNARD COOPER & GALE, P.C.
655 Gallatin Street SW
Huntsville, AL 35801
Phone:  256.551.0171
Fax: 256.512.0119
tdodgen@maynardcooper.com

C. Brandon Browning (ASB-8933-W78C)
MAYNARD COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 6th Avenue, North
Birmingham, AL  35203-2618
Phone: 205.254.1000
Fax: 205.254.1999
bbrowning@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and set forth below, and paper copies will be sent to those indicated as non-registered participants by first class mail, if any, on March 22, 2018.

*/s/ Harvey J. Wolkoff*
*Attorney for Defendants*